(No. 16609.—Reversed and remanded.)
CATHERINE RIPPINGER et al. Appellants, vs. GEORGE L.
NIEDERST, Appellee.

*Opinion filed April 24, 1925—Rehearing denied June 10, 1925.*

1. MUNICIPAL CORPORATIONS—*when Chicago ordinance requires frontage consent of owners on two streets.* An ordinance of the city of Chicago requiring a party desiring to erect a public garage abutting on a public alley or court to obtain the consent of property owners "on the street to which such alley or court leads," must be construed as requiring consent of owners on the two streets to which the alley or court leads.

2. SAME—*clause 82 of section 1 of article 5 of Cities and Villages act is in force as enacted in 1911.* Although the amendment of 1919 to clause 82 of section 1 of article 5 of the Cities and Villages act is unconstitutional and renders the entire clause void as amended, the invalidity of the amendment will not be given the effect of leaving section 1 without a clause 82, but said clause as enacted in 1911 and as it existed prior to the amendment is still in force and authorizes an ordinance regulating the erection of public garages, whether such ordinance was passed before or after the invalid amendment.

3. STATUTES—*words in singular may include the plural.* Words importing the singular may be extended and applied to several persons or things, and words importing the plural number may include the singular.

4. SAME—*invalid statute cannot repeal former law by implication.* An unconstitutional statute cannot have the effect of repealing by implication a former law or part thereof.

5. ESTOPPEL—*when a building commissioner is not estopped to defend ordinance.* A building commissioner who has issued a permit for the erection of a public garage under an ordinance requiring frontage consents, and who is made a co-defendant in a suit to enjoin the erection of the garage, is not estopped, by filing an answer disclaiming any interest in the suit, to ask leave to withdraw his answer and become a co-complainant so as to defend the ordinance after his co-defendant has amended his answer by alleging that the ordinance is invalid.

6. SAME—*city cannot be estopped by act of unauthorized agent.* A city cannot be estopped by an act of its agent beyond the authority conferred upon him.

7. EQUITY—*when rule that all complainants must be entitled to recover does not apply.* Where a building commissioner, originally

made a defendant to a suit to enjoin the erection of a public garage for which he has issued a permit, on his own motion is made a party complainant so that he may defend the validity of the ordinance, the fact that he may not be entitled to a decree because he is interested in his official capacity only, does not defeat the right of the other complainants to a decree. (*Girard* v. *Lehigh Stone Co.* 280 Ill. 479, distinguished.)

APPEAL from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding.

FRANCIS X. BUSCH, Corporation Counsel, WILLIAM L. SULLIVAN, and BENNISON F. BARTEL, (TOLMAN, SEXTON & CHANDLER, of counsel,) for appellants.

ABRAM L. MYERS, (LLOYD C. WHITMAN, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

The appellants other than the building commissioner of the city of Chicago filed a bill against the appellee praying for an injunction restraining the erection of a public garage in approximately the middle of a block in the city of Chicago bounded by Ellis avenue on the east, Forty-second place on the south, Drexel boulevard on the west, and by the right of way of an elevated railroad (formerly Forty-first street) on the north. The tract of land upon which the appellee sought to build the garage in question lies on the west side of the public alleyway which passes in a general north and south direction through approximately the center of this block. This tract is bounded on the north, west and south by a twenty-foot alleyway, which opens into the north and south alley of the block. The bill avers that the block has been zoned as a residence district, and that more than two-thirds of the property on both sides of the streets surrounding it is occupied exclusively for residence purposes; that the construction of the garage by the appellee would depreciate the fair cash market value of the property

and cause damages not susceptible of exact computation, thus preventing adequate remedy at law, and would cause a multiplicity of suits. The bill avers that a permit had been issued to the appellee by the commissioner of buildings of the city of Chicago, and that such permit is void because it is not in compliance with the ordinance governing the matter, in that the frontage consent required by the ordinance was not secured. Appellee answered, denying the allegations of the bill and averring that the complainants have been guilty of *laches.* A hearing was had on the issues presented, and at the close thereof the appellee sought and procured leave to amend his answer. By his amended answer he alleged that the city ordinance requiring frontage consents for the construction of a public garage was unconstitutional and void. Upon filing this answer the building commissioner of the city of Chicago, who had been made a party defendant by the complainants and had filed an answer disclaiming an interest in the controversy, sought and procured leave to withdraw his answer and to be made a party complainant on the ground that the amendment to the defendant's answer which challenged the validity of the ordinance developed an interest in the commissioner, representing the city of Chicago, which was contrary to the interest of the appellee, and that it was to the interest of the city that the ordinance be sustained. The chancellor found all issues of fact and law in the bill and the original answer in favor of the appellants but found the frontage consent ordinance unconstitutional and void, dismissed the bill for want of equity, certified that the validity of a municipal ordinance is involved and granted an appeal to this court.

The appellants urge here that the building ordinance referred to is valid. The appellee has assigned cross-errors, contending that the court erred in finding other issues of fact and law in favor of appellants, but states in his brief that the principal question in the case is as to the validity

of the ordinance. While his counsel argue the questions of fact involved, we are convinced, on a review of the record, that the findings of fact are sustained by the record, and therefore upon consideration of the case we will state the facts as found by the chancellor and as in our opinion the record shows them to be.

The ordinance in question appears in the municipal code of the city of Chicago as revised in 1922, and section 242 thereof defines a public garage. Section 246 provides: "No person, firm or corporation shall locate, build, construct or maintain any public garage * * * in the city on any lot in any block in which two-thirds of the buildings on both sides of the street are used exclusively for residence purposes * * * without the written consent of a majority of the property owners according to frontage on both sides of the street; provided, that all lots which abut only on a public alley or court shall be considered as fronting on the street to which such alley or court leads. Such written consents shall be obtained and filed with the commissioner of buildings before a permit is issued for the construction of any such building, or before a license is issued for the operation of any public garage in any existing building; provided, that in determining whether two-thirds of the buildings on both sides of such street are used exclusively for residence purposes, any building fronting on another street and located upon a corner lot shall not be considered; and, provided, further, that the word 'block,' as used in this section, shall not be held to mean a square, but shall be held to embrace only that part of the street in question which lies between the two nearest intersecting streets."

The bill avers, and the record shows, that Forty-first street, which formerly bounded this block on the north, is now occupied by a railroad, which by an ordinance of the city of Chicago of March 16, 1903, was required to, and did, elevate its tracks along the north boundary of this block, thereby occupying the street and cutting off traffic

from the alley in this block across Forty-first street. Prior to that time for a number of years the street had been used by the railroad company, but traffic in this alley north and south crossed Forty-first street. In the elevation of the road a solid embankment, with concrete retaining walls, was erected. Paragraph 10 of the ordinance of March 16, 1903, required that the railroad dedicate as a public alley the south twelve feet of its right of way between Ellis avenue and the alley running north and south through this block, so that one coming from the south in the alley could, by turning east across this twelve-foot strip, reach Ellis avenue. The sufficiency of the dedication of this twelve-foot strip is questioned. The evidence amply shows, however, that it has been indiscriminately used by the public for more than fifteen years as a public highway and its character as a public alley can no longer be a matter of doubt. It leads to Ellis avenue from the point where the railroad embankment crosses the north and south alley and must be held to be a continuation of that alley. To say, as urged, that it is not a continuation of the original public alley but is a distinct and separate alley leading from the original alley to Ellis avenue is a refinement of discrimination which we are unable to follow.

As we have seen, section 246 of the municipal code as revised in 1922 provides that in cases where a public garage is sought to be built on property abutting only on a public alley or court, such property "shall be considered as fronting on the street to which such alley or court leads." That section requires that consent of a majority of the property owners, according to frontage on both sides of the street, must be secured before such permit will issue. The record shows that the appellee procured the consent of a majority of the property owners according to frontage on Forty-second place, only, and made no attempt to secure the consent of property owners on Ellis avenue, for the reason that, as there and here contended, the only street to which the

alley adjacent to this property leads is Forty-second place, and that since the ordinance refers only to "the street" and not to the streets to which the alley leads, the frontage consent requirement of the ordinance was complied with by securing frontage consents on Forty-second place. The appellants, on the other hand, contend that it is necessary to have the consent of a majority of the property owners according to frontage on Ellis avenue as well as on Forty-second place. It seems absurd to say that an alley which, in fact, opens into two streets does not lead into such streets. An alley that is not a blind alley necessarily leads to more than one place, and the alley in this case leads to Ellis avenue as well as to Forty-second place. To hold that the word "street," as used in the ordinance, requires frontage consents on one street, only, is to render the operation of the ordinance uncertain and impracticable, as it contains no language specifying which street is to furnish the necessary frontage consent. It is settled in this State, both by statute and the decisions of this court, that words importing the singular may be extended and applied to several persons or things, and words importing the plural number may include the singular. (Smith's Stat. chap. 131, sec. 1, clause 3; *Arnold & Murdock Co.* v. *Industrial Board, 277* Ill. 295.) It was necessary under this ordinance to procure the consent of the owners of a majority of the frontage on both Ellis avenue and Forty-second place where they bound the block in question. Therefore, if this ordinance be valid, the frontage consent was not sufficient and the permit issued thereon was void. This brings us to the principal question involved.

The appellee contends that the ordinance is void for the reason that clause 82 of section 1 of article 5 of the Cities and Villages act, as amended in 1919, under authority of which this ordinance was passed, has been declared invalid by this court. The appellants contend that the unconstitutionality of clause 82 in effect revived that clause as it existed prior to the amendment of 1919, and that the attempt

to amend it at that time was void and of no effect and did not in any way change the clause as it existed prior to the amendment. It is further urged that while the provision of the ordinance requiring frontage consent appears in the revision of the city code of 1922, after the amendment of clause 82, such provision was also in all prior ordinances subsequent to 1911, and was therefore first enacted under clause 82 of said section as in force prior to the amendment of 1919, and is for either of these reasons valid, notwithstanding the invalidity of clause 82 of said section 1 as amended in 1919.

Clause 82 of section 1 as amended is as follows: "To control the location and regulate the use and construction of breweries, distilleries, livery, boarding or sale stables, wagon repair shops, blacksmith shops, foundries, machine shops, public garages, private garages and stables designed for the use of five or more vehicles, hangars, laundries, bathing beaches, brick yards, planing mills, flour mills, box factories, lead factories, steel factories, iron factories, ice plants, either for the manufacturing or storing of ice, factories or other manufacturing establishments using machinery or emitting offensive or noxious fumes, odors, or noises, and storage warehouses, within the limits of the city or village: *Provided,* that this clause shall not be construed to require the removal of any of the above enumerated buildings from any location which they may lawfully occupy at the time of the passage of any ordinance hereunder." (Laws of 1919, p. 285.) This clause prior to the amendment of 1919 was as follows: "To direct the location and regulate the use and construction of breweries, distilleries, livery, boarding or sale stables, blacksmith shops, foundries, machine shops, garages, laundries and bathing beaches within the limits of the city or village." (Laws of 1911, p. 179.)

Clause 82 as amended in 1919 was held unconstitutional and void on the ground that the proviso in it makes penal

an act·done by one person but imposes no penalty for the same act done under like circumstances by another. It was also held that, the proviso being void, the entire clause was void because it cannot be assumed that the legislature would have passed the clause without the proviso. (*People* v. *Kaul*, 302 Ill. 317.) The appellants contend that the effect of the *Kaul case* is to leave in force clause 82 as amended in 1911, while appellee contends that the effect of the invalidity of this clause was not to revive clause 82 as it existed under the 1911 act, but to leave section 1 of the act without a clause 82, and therefore without any provision authorizing the regulation of the erection of garages. In support of this contention he cites *Cook County* v. *Healy*, 222 Ill.·310, and *People* v. *Fisher*, 274 id. 116.

In *Cook County* v. *Healy* the statutes under consideration were the act of 1871 concerning the salaries of judges and State's attorneys, and that of 1901 amending it. The act of 1871 contained but one section. The amendatory act of 1901 was in three sections. Section 2 thereof was held to be unconstitutional upon the ground of material alteration of the same between its passage and its signature by the Governor. This section provided for the salary of the State's attorney of Cook county. The act of 1871 provided in one section for the salaries of judges of the circuit and superior courts of Cook county and the State's attorney of that county. It was in that case held that where there is an attempted repeal of an act by a statute which is void the previous act remains in force. It was said of the acts under consideration: "If the amendatory act is valid in any of its provisions, it cannot be said that some particular provision of the act of 1871 is still in force. The provisions for the salaries of the judges and State's attorney were contained in a single section of the act of 1871, and if this amendatory act is valid with the exception of section 2, there is no act in force under which the State's attorney is entitled to any salary whatever from the county

of Cook." In that case the amendatory act was valid in part and amended the section to the extent covered by its valid portion. The existence of the valid portion of the amendatory act operating on a single section of the original act disposed of the original act and substituted for it the valid portions of the amendatory act. That case is not on all-fours with the case at bar. While clause 82 of section 1 is a clause of one section as it is written in the statute, yet it is evident that it is so written as a matter of convenience, to avoid repetition of the first sentence of section 1, designating city councils and presidents and boards of trustees of villages as the recipients of the power described in the various clauses. In the *Healy case* the one section of the original act was indivisible. The distinction between the situation in that case and that in this case seems clear.

Section 1 under consideration is by no means indivisible. The section contains 100 separate and distinct clauses, the amendment of any one of which may be accomplished without affecting other clauses. So far as clause 82 is concerned, the amendatory act of 1919 was in no part valid, for the reason that the proviso added to that clause caused the entire clause to fall. An amendment is a change. If there is nothing valid in the change it cannot be said that a change has taken place. *A fortiori,* if there be no change that which is sought to be changed remains as it was. The amendatory act of 1919 contained no repealing clause, and an unconstitutional statute does not repeal a former law or part of law by implication. (*People* v. *Fox,* 294 Ill. 263; *People* v. *Butler Street Foundry Co.* 201 id. 236; 1 Lewis' Sutherland on Stat. Const. sec. 245.) The rule laid down in *People* v. *Fisher, supra,* cited by the appellee, has to do with the effect of a statute revising the subject matter of a former statute where it is intended as a substitute for it, and is not authority for the appellee's contention that the effect of the unconstitutionality of clause 82 as amended in 1919 is to leave section 1 without a clause 82. We are of

the opinion that the ineffectual attempt to amend clause 82 left that clause in force as it was enacted in 1911, and that the city of Chicago had authority to pass the ordinance assailed here.

But the appellee urges that even though clause 82 as it existed prior to the amendment of 1919 be held valid, the ordinance in this case was not passed until 1922 and cannot be held to be valid. Under the view we have expressed concerning the existence of clause 82 as enacted in 1911, it is immaterial whether the ordinance in question was passed before or after the amendatory act of 1919. That act never having been in effect so far as that clause is concerned, clause 82 as enacted in 1911 was in effect, and under it the ordinance in question was authorized. It was error on the part of the chancellor, therefore, to hold this ordinance unconstitutional and void.

It is contended by the appellee on cross-errors assigned, that the appellants in this case were guilty of *laches* and so are estopped. A large portion of the brief of counsel is devoted to this proposition. The evidence in the record upon which this contention is based is practically undisputed. It shows that the appellee procured the building permit in question on November 19, 1923, and began building operations. He planned a building containing a number of automobile stalls or storage rooms for rent. Complaints were filed with the building commissioner against the construction of the garage. The work ceased. A meeting was arranged between the property owners and the appellee. A number of such owners met with the appellee. It was proposed that the property owners buy the appellee's property and pay him therefor the cost of the property plus ten per cent of such cost and the amount of expense to which he had been put in procuring materials and having work done on the garage up to that time. There was an agreement to this effect later entered into though not reduced to writing. Although there is a conflict in the evidence as

317—18

to the details of the negotiations, an understanding was reached between the parties looking to the purchase of this property by the property owners in the block. While these negotiations were in progress the contractors who were to build the garage placed a mechanic's lien on the property, thus preventing the clearing of the title, and eventually the agreement failed. Nothing further was done toward the building of the garage, however, until in September, 1924, when building operations were resumed. As soon as the work was re-commenced the property owners again protested, and the work was stopped pending an opinion by the corporation counsel of the city of Chicago as to the validity of the frontage consents. An opinion was rendered holding such consents sufficient, and the appellants immediately filed the bill in this case. The evidence shows due diligence on the part of the appellants.

It is also contended by the appellee that the building commissioner having issued the permit herein is estopped to deny the validity of it and is not entitled to a decree, and that since he as a party complainant is not so entitled none of the parties complainant are entitled to recover, for the reason that all parties who join in a suit must be entitled to recover or none can. Counsel for the appellee cite in support of this position the case of *Girard* v. *Lehigh Stone Co.* 280 Ill. 479. It is the rule, as stated in that case, that if any one or more of the complainants in a suit in equity fail to maintain a case against the defendant, the remainder of the parties, in order to maintain their suit, must by leave of court amend their bill by striking out the names of such co-complainants who have no cause of action. That rule presupposes parties complainant who have not the right to a decree. In this case, unless there be an estoppel against the building commissioner, it cannot be said that he is one not entitled to a decree. Other cases cited by the appellee as authority for the contention that the building commissioner is estopped are those where parties acting on permis-

sion given by the city have proceeded to the erection of an expensive building or other structure and the city has thereafter attempted to prevent its use. Such is not the case at bar, as action was taken as soon as the appellee started the construction of his building.

By his original answer the building commissioner disavowed any interest in the case and submitted himself to the jurisdiction of the court under whatever decree the court should enter. When, however, the appellee attacked the constitutionality of the ordinance a new issue arose, making the situations of the parties in the cause somewhat unusual. The building commissioner apparently felt it was his duty, as a party to the proceeding, to defend the legality of the ordinance involved. Under the ordinance the building commissioner had no authority to issue a building permit without the consents required by the ordinance. He appears in this cause only in his official capacity, as representing the city. The estoppel, if such existed, would be an estoppel against the city by reason of the action of its agent, the building commissioner. The permit was invalid and the commissioner had no authority whatever to issue it, and to hold that the actual parties in interest here could not in such a case recover because a co-complainant without actual interest could be estopped would be a far too technical application of the rule referred to in the *Girard case.* Moreover, the city cannot be estopped by an act of its agent beyond the authority conferred upon him. (*Burton Co.* v. *City of Chicago,* 236 Ill. 383.) This contention cannot be sustained.

We are of the opinion that the findings of the chancellor on questions of fact and propositions of law other than the validity of the ordinance involved were correct but that he erred in holding the ordinance invalid. For this error the decree is reversed and the cause remanded, with directions to enter a decree granting the injunction as prayed.

*Reversed and remanded, with directions.*