## Roscoe J. Todd, Administrator of Estate of Nellie J. Todd, Deceased, Appellee, v. S. S. Kresge Company, Appellant.

Gen. No. 9,485.

October term, 1939. Heard in this court at the Opinion filed December 15, 1939. Rehearing denied February 6, 1940.

ELLIS & HAMILTON, of Elgin, for appellant; PAUL M. HAMILTON, of Elgin, of counsel.

CHARLES G. SEIDEL, of Elgin, and ERNEST W. AKEMANN, of Chicago, for appellee.

MR. JUSTICE HUFFMAN delivered the opinion of the court.

This suit was originally commenced by Nellie J. Todd, deceased, to recover for personal injuries received by a swinging door at the entrance to a store operated by appellant. The accident happened on October 16, 1937. Suit was brought by the injured party on February 8, 1938. Plaintiff in the suit died June 15, 1938. Appellee administrator was substituted as plaintiff, and an amended complaint filed. A trial by jury resulted in a verdict for $7,500. Appellant prosecutes this appeal from judgment rendered thereon.

On the evening of October 16, 1937, the deceased and her daughter went to appellant's store in the city of Elgin. The entrance to the store consisted of double swinging doors located at the middle of the store front. On each side of the doors were display windows. The entrance from the sidewalk to the doors was tiled and about 9 feet in width at the sidewalk line. This entrance way narrowed to the width of the swinging doors. The doors had a total width of slightly over 5 feet and set about 4½ feet back from the sidewalk line. They were the common type of swinging doors used at the entrance of business concerns of this character. The doors swung either way, that is, both inwardly and outwardly. They were equipped with double acting spring hinges which permitted them to thus swing in either direction. They were also equipped with door checks at the top, which served to stop them at the proper place when swinging closed.

On the evening in question, the deceased and her daughter went to appellant's store. The daughter states that she entered the store first and through the right-hand door; that the door was then swung inwardly; that it was standing open in this manner; that after she entered the store and had proceeded a few feet, she turned to look back toward her mother, at which time she observed the door swinging to a closed position. The deceased was carrying her purse and several merchandise bundles. As the north door swung

to a closed position the daughter observed her mother fall. It is the contention of the daughter that the door in swinging shut, struck her mother, knocking her to the floor of the entrance way. The deceased in her fall sustained a broken hip. She was 68 years old and afflicted with pernicious anemia, from which disease she died. Following her injury, she was removed to the hospital. The testimony of the surgeon is to the effect that she had a fair recovery from the fracture. Her death was in no way connected with the accident. The damages sought in this suit are based solely upon the injuries received from the accident.

The daughter in her testimony states that she and her mother had been frequent customers at this store and were acquainted with the operation of the swinging doors. She states that she noticed no difference in their operation at the times she used them. She says that on the evening in question the north door was swung inwardly and was standing open in that position. Two witnesses testify for appellee, that prior to the date of the accident, they had observed the doors at appellant's store opened inwardly and standing open in such position.

The manager of the store was called as a witness for appellee, under section 60 of the Civil Practice Act, [Ill. Rev. Stat. 1939, ch. 110, sec. 184; Jones Ill. Stats. Ann. 104.060] and examined in detail regarding the doors, their mechanical equipment, and manner of operation. It appears from his testimony that they were equipped to swing both inwardly and outwardly such as is common to entrances of this character. He further states that they were not equipped to remain standing open when swung inwardly, and that upon being swung or pushed open inwardly, they would by virtue of the mechanical equipment controlling their operation, return to a closed position. This witness further states that the doors were equipped on the outside, at a place near the bottom, with a device which

would enable them to be opened outwardly and fastened so that they would remain open; but that there was no such equipment or device whereby they could be opened inwardly and caused to remain in that position; that in order for this to be done, the mechanical apparatus connected with their operation would have to be dismantled. He says that at the time in question, the mechanical equipment of the doors was not so dismantled and that it was working in the usual and customary manner. This witness had been manager of this store for about two and one-half years prior to the accident. He states that the doors and the equipment connected with their operation were the same as when he became manager; that they were in the same condition; and that they were checked frequently.

The manager of the store also testified for appellant. He states that the doors on the evening in question were not standing open at any time, so far as he knew. He again asserts that the mechanism controlling their operation did not permit them to stand open of their own accord. He further states, upon information obtained from his records, that these doors were used approximately 800,000 times a year since he had become manager of the store, and that this was the first accident of this kind of which he had any knowledge.

Several witnesses testified for appellant, who were present and saw the accident. The first of these was James Salisbury, who by occupation is a bookkeeper. His wife was employed at this store on the evening of the accident. He arrived there at about 10 minutes before 9, to meet her. He states it had been raining and the weather was chilly; that he did not go into the store, but stopped at the entrance and remained outside. He says he had been standing at the entrance to the store about 10 minutes before the accident occurred; that during this time he saw people enter the store; and that he saw the accident happen to Mrs. Todd. He states he was standing, facing the entrance

to the store and directly in front of same; that when Mrs. Todd was about a foot from the doorway, and about to enter through the north door, he saw her throw up her arms and saw her packages drop, whereupon she fell to the south and against the south show window and slumped upon the tile entrance way. This witness was the first person to reach her. He states that she was in the entrance way leading from the sidewalk to the doors and about a foot from the doors. He says that he saw the doors just prior to her approaching the entrance, that they were working and that neither of them were standing in an open position. He states that as Mrs. Todd approached the entrance, the north door had been opened by another person and was in the act of closing itself just as she reached her position before it, whereupon she threw up her hands in the manner above described. He says that at the time she threw up her arms, the north door was just coming to a closed position; that he did not see it strike her; and that she was about one step from the door when she threw up her arms and fell. This witness further states that three ladies entered the door through which Mrs. Todd was about to pass, immediately before her, and that following these ladies, Mrs. Todd's daughter passed through the door. This witness picked up the packages for Mrs. Todd after the accident. She was placed in a taxi and taken away. He states she fell in the entrance way before she had reached the doorway.

The witness Dorell Thelander, was at the store on the evening in question. He is a clerk for the Milwaukee Railway Company and works in Chicago. He was at the store waiting for his wife who was employed there at this time. He went to the store at about 10 minutes before 9. He states that he saw the door swing in and out; that he knew Miss Todd and her mother by sight; that during the time he was standing there waiting for the store to close, neither of the doors were open except when someone was passing through

them. He says he saw Miss Todd enter the store and that she was 10 feet from him; that he saw her come to the door and that there were two other ladies directly behind her, who entered. He states Miss Todd walked down the south aisle of the store to a distance of some 12 or 14 feet. He says he saw her mother approaching the entrance to the store; that when he first saw Mrs. Todd she was about a foot or 14 inches from the doors, that both doors were swinging, and that the north door was swung inwardly, having just been used by the ladies who had entered the store following Miss Todd; that the door was at about a 60 degree angle and opened inwardly when Mrs. Todd approached it, and that at such time it was in the act of swinging shut; that as Mrs. Todd approached the door to enter, he saw her throw up both hands and fall over in the entrance way; that she had several bundles which fell to the entrance way; that he did not see either door strike her; that to the best of his judgment when she threw up her hands and fell she was about a foot from the doorway entrance, and that as she threw up her hands, she took a step backwards and fell. This witness immediately went to her assistance. He states that the closing time for the store was 9 o'clock; that the 9 o'clock closing bell had already rung, but that customers were in the store and business was still being transacted; that it was about two minutes past 9 when he saw Miss Todd enter the store; that it had been raining and the streets were damp and the weather chilly. He says that he observed Miss Todd as she came into the store and that just at the time her mother met with her accident, Miss Todd turned to look toward the door. This witness on cross-examination states positively that Mrs. Todd was not struck by either the north door through which she apparently intended to enter the store, or by the south door.

The witness Fred Grenawalt, states that he is a pressman in a publishing company in Elgin, where he has been employed for over 28 years; that he was in

the store on the night of the accident; that he went
there about five minutes before 9; that he entered
through the north door which is the door alleged to
have caused Mrs. Todd's injuries; that it was closed
when he entered; that he went to see his daughter who
was a clerk; that he gave her some instructions and
turned and started back toward the doorway for the
purpose of going outside the store; that the closing bell
had rung; that as he approached the front door with
the intention of going outside, he saw Mrs. Todd fall;
that when he first saw her she had started to come
through the north door; that he saw her throw up her
hand to catch the swinging door which had been opened
by someone preceding her, and which was then in the
act of swinging shut; that the person who went through
the door just in front of Mrs. Todd was a woman; that
she passed through the door and let it swing; that as
Mrs. Todd started to walk through the door it swung
toward her; that she put out her hand to stop the door
and lost her balance; that she then threw up her left
hand in an effort to grasp the south door, and fell. He
says she fell in the entrance way right in front of the
doors and that her head was to the south. The witness
immediately went to her assistance. He states he had
not known Mrs. Todd before this time. He says the
door was not standing in an opened position, inwardly,
prior to the accident. The witness states that as he
was approaching the doors to go out and saw Mrs.
Todd approaching them to come in, he was possibly
10 or 12 feet inside the store. He says he saw some
ladies go through the south door and that he saw a
lady enter through the north door just two or three
steps ahead of Mrs. Todd, and that Mrs. Todd was
then almost at the threshold of the store entrance;
that this door was opened by the lady just in front of
her and was in the process of closing as she came to
the threshold; and that it started to close when the
lady in front of her released it. This witness is of the

opinion that Mrs. Todd held out her right hand to stop the door which was closing toward her, that she lost her balance and threw out her left hand in an effort to catch the south door; that she failed in this respect, and that she then fell, and that just as she started to fall, the witness thinks the north door swung closed and struck her on the right arm. He is of the further opinion that she had started to cross through the doorway and had one foot on the threshold or just inside the entrance to the store, when the door which had been released by the lady in front of her, started to swing to a closed position.

The witness, Joseph Horna, lives in Elgin and is a tool and dye worker. He was present at the store on the night in question waiting for his wife who was employed as a clerk. He states that the closing bell had rung; that it was shortly after 9 o'clock; that he was standing at the front of the store by a dress rack about 5 feet from the entrance; that after the ringing of the closing bell people came into the store; that he saw three ladies and a child come through the door; that these people were followed by Mrs. Todd's daughter; that when the daughter came through the north door she was immediately behind the three ladies and the child; that one of them had been holding the door open for the others to enter; that Miss Todd entered at this time; that following Miss Todd was an elderly lady coming to the entrance at the north swinging door; that she was almost at the threshold of the right-hand door, which was the north door; that just as she reached this point the door swung shut after having been released by the parties who had preceded her into the store; that she backed up a little and threw up her hands in front of her and fell over; that the north door had almost closed when he saw her throw up her hands; that it had been immediately opened before swinging shut; that she was carrying bundles which she dropped upon throwing up her arms; that she fell across the

entrance way on her left side. The witness states that he immediately went to her assistance. The first he saw of Miss Todd after the mother's accident, was when they were engaged in picking up the packages from the entrance way. This witness and the witness Salisbury helped Mrs. Todd into a taxi in which she and her daughter left.

The witness, George Sterricker, states that he lives in Elgin, is employed at the Elgin Machine Works, and was at the store at the time of the accident. He went to the store shortly before the accident occurred. He says that neither of the doors were standing open when he entered, and that neither of them were standing open while he was there, so far as he observed, except when in use by customers; that he was standing at the front of the store during the entire time; that he heard the closing bell ring; that he saw Mr. Horna and Mr. Thelander; that he saw Miss Todd enter the store through the north door; that he saw her start down the south aisle; that he saw Mrs. Todd approaching the entrance to the store; and that when he first saw her she was about a foot and a half from the doors. It appears that she was in the act of falling at about the time this witness first noticed her. He says that just immediately before he saw her, people had been passing through this door. He saw Mrs. Todd throw up her hands and fall. He states she had several bundles. He does not think she was closer than a foot to the door when she fell, and that she fell to the south. The witness went to her assistance and found her lying with her head about 6 inches from the south show window. He states she was lying on the entrance way to the store between the sidewalk line and the doors. He was with her when Miss Todd came out of the store. He states the first thing that attracted his attention to Mrs. Todd was when he saw her throw up her hands and drop her bundles. He says this was before she reached the doorway and that it appeared like she had lost her balance.

Appellee introduced two rebuttal witnesses, a hardware dealer and a traveling salesman, who gave testimony concerning the character of the equipment on the doors. While their testimony is to the effect that in their opinion the equipment which controlled the operation of the doors was not in perfect condition, yet they were not present on the evening of the accident and had no opportunity to observe the operation of the doors, as did the witnesses who testified in chief.

It is appellee's contention that appellant is liable under the doctrine of *res ipsa loquitur*. To render this doctrine applicable, it must be shown that the instrumentality causing the injury was under the control of the defendant, and that the injury was caused by some act incident to such control, and be of such a nature that it would have not occurred but for the defendant's negligence. Here, the accident might have resulted from one of several causes, for some of which the defendant would not be liable. Swinging doors in store buildings are common to such places of business. They are installed for the accommodation of those who wish to enter the store. Operation of such doors is not within the exclusive control of the proprietor of the store. Persons using them take a distinct part in their operation and are chargeable with the exercise of ordinary care in the use thereof. Injuries may occur in their operation from a lack of due care, either on the part of the person injured or from that of those using the door at or near the same time as the person injured. Under conditions of that character, a proprietor could not be considered liable.

The law raises on the part of a proprietor of a store, an implied invitation to the public to come into his building or upon his premises, should they seek to do business with him; therefore it is held that he is under a legal obligation to exercise ordinary and reasonable care to the end of making his premises safe for the protection of his customers. Under the operation of this principle, the general rule is, that where

an appliance or structure not obviously dangerous, has been in daily use for an extended period of time and has proven adequate, safe, and convenient for the purposes to which it was being put, it may be further continued in use without the imputation of negligence. However, the rule which requires a reasonable care on the part of the proprietor, does not demand that he have actual notice of the defect. When he invites members of the public to come upon his premises as customers, he is chargeable with notice of any defect which would or might have been discovered by a reasonable inspection. The rule of ordinary reasonable care requires such inspection.

The evidence on the part of appellee shows that the deceased had been a patron of this store for a long time and was familiar with the operation of the swinging doors which afforded entrance thereto. The evidence further shows that the equipment used on the door was standard; that the weather was chilly and that it had been raining; that the closing bell had rung previous to the time the deceased started to enter the store; and that people were passing in and out of the doors rapidly. Under the evidence in this case we do not consider that the doctrine of *res ipsa loquitur* applies. A proprietor is not an insurer against all accidents and injuries to customers coming to his place of business.

The doctrine of *res ipsa loquitur* not applying, we do not think the evidence is sufficient to prove or establish such negligence on the part of appellant as to render it liable.

The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*