DOMINIC LOMBARDO, Plaintiff-Appellant, v. RELIANCE ELEVATOR COMPANY, Defendant-Appellee.—DOMINIC LOMBARDO, Plaintiff-Appellee, v. RELIANCE ELEVATOR COMPANY, Defendant and Counterdefendant-Appellee (W.S. Partners, Defendant and Counterplaintiff-Appellant).

First District (2nd Division)   Nos. 1—99—1032, 1—99—1033 cons.

Opinion filed June 30, 2000.

Brian J. McManus, Thomas J. Loucks, and Brian J. McManus, Jr., all of Brian J. McManus & Associates, Ltd., of Chicago, for appellant Dominic Lombardo.

James R. Dashiell and Jamie L. Ziegler, both of Riordan, Dashiell & Donnelly, Ltd., of Chicago, for appellant W.S. Partners.

Daniel F. Gallagher and David L. LaPorte, both of Querrey & Harrow, Ltd., of Chicago, for appellee Reliance Elevator Company.

JUSTICE McNULTY delivered the opinion of the court:

Plaintiff, Dominic Lombardo, suffered injuries when the lift he was riding suddenly fell. A jury rejected the claim against the party who maintained the lift but found the building's owner liable. The building owner and plaintiff filed separate appeals, which we consolidated.

Plaintiff worked in the maintenance department of Avenue National Bank in Oak Park. He had a small office in the basement. When he received an emergency call on November 30, 1994, he took a sidewalk lift to get from the basement to the parking lot. The lift rose to within a foot of sidewalk level, but then it suddenly fell to the basement, bringing plaintiff down with it. Plaintiff sustained severe injuries to both feet.

Oak Park paid Edwin Jacobitz to inspect all the elevators and lifts in the village twice a year. When he inspected the sidewalk lift in October 1993, he wrote in his remarks:

"Replace hoist cable, very rusty and dry. *** Have this done by Nov. 1 1993."

Oak Park mailed to the bank a copy of Jacobitz' report. When Jacobitz next inspected the lift in February 1994, he made no remarks.

After Jacobitz retired, Oak Park contracted with Elevator Inspection Service (EIS) for the inspections. Thomas Bush, an employee of EIS, noted no problems with the lift when he inspected it in August 1994.

The bank paid Reliance Elevator Company to examine and oil the lift once every three months. On November 11, 1994, Reliance performed its regular maintenance and inspection, noting no problems with the lift.

Plaintiff sued Reliance for negligent maintenance, and he sued EIS and Jacobitz for negligent inspections. He also sued W.S. Partners (WS), the beneficiary of the trust which held title to the building, claiming WS had a duty to maintain the lift in safe condition. WS counterclaimed against the three other defendants. Reliance filed a third-party claim for contribution against the bank. WS, Reliance, and the bank all admitted that they did not replace the cable between October 1993, when Jacobitz found it defective, and plaintiff's accident in November 1994. Jacobitz, EIS, and the bank reached settlements with plaintiff. Reliance and WS agreed that the jury's apportionment of responsibility on trial of the complaint would govern the apportionment of liability for purposes of the counterclaim.

The court denied most of the numerous motions *in limine* the parties presented.

At trial plaintiff admitted that the lift had a "no passengers" sign. He rode the lift perhaps two or three times a year. No one told him not to ride the lift, and he never asked why it had the sign.

One of plaintiff's coworkers testified that as part of his work he periodically needed to take a quantity of plastic containers out of the bank. He would put them on a cart, push the cart onto the sidewalk lift, and then he would ride the lift with the cart to the sidewalk. He said he had to ride the lift because the lift had no walls, rails, or anything to tie down the cart. The cart could roll on the lift, and if it rolled to the side, it could obstruct the lift, damaging it. Once the cart reached the sidewalk, someone in the basement needed to run the lift to bring it back down. The only control panel was in the basement, near the lift. He could operate the controls easily while standing on the lift.

Plaintiff's supervisor, in charge of building maintenance, testified that the letter from Oak Park regarding the sidewalk lift should have come to his attention. He did not remember ever seeing the letter. As far as he knew, no one ever replaced the cable.

The president of Reliance admitted that the contract with the bank required Reliance to inspect the lift's cables. Plaintiff presented as an exhibit an enlarged copy of part of the contract, and the president read into evidence the paragraph stating its duties under the contract. No party questioned the president about any other part of the contract. The lift had a "no passengers" sign because the lift's design made it dangerous to ride.

A former Reliance employee swore that the person performing maintenance on the lift should lubricate the cables periodically. He said that operators could ride on the sidewalk lift even though passengers should not.

Woodrow Nelson, a mechanical engineer, testified that he inspected the sidewalk lift after the accident. He showed the jury photographs of the frayed end of the broken cable, pointing out that it was extremely dry at the break. He found that the most readily accessible portions of the cable had been lubricated, but the portion that failed showed no signs of lubrication. In his opinion, the cable failed due to lack of proper maintenance. While parts of the cable had been recently lubricated, the part that failed had not been lubricated for several years.

Bush, who inspected the lift for EIS before the accident, testified that he worked with elevator maintenance for 50 years. The lift had a design that made it too dangerous for riders. After he inspected the cable he concluded that the lift's platform encountered an obstruction as it rose, and when the motor kept pulling the cable, the cable simply snapped. The condition of the equipment had no bearing on the failure.

On cross-examination, Bush conceded that he did not consider himself an expert. He was not an engineer and he had no training in physics after high school. He did not examine the cable in any detail; he noted only that it had broken. He reviewed no experts' depositions or other evidence. Plaintiff presented him with facts from those depositions, and details concerning the cable, and asked if those facts could affect his opinion about the cause of the break. Bush answered that nothing would affect his opinion in the case. He had no idea what object could have obstructed the lift, and he pointed to no evidence—apart from the broken cable—showing such obstruction. He offered no explanation or support for his opinion that only an obstruction, and not wear, use, or lack of lubrication, could have caused the cable to break.

Richard Gregory, an electrical engineer who specialized in elevators, testified for Reliance that the lift did not qualify as an elevator under applicable standards, because it lacked requisite cables, switches

and gates. No person should ride the lift, either as a passenger or as an operator. On cross-examination, and over Reliance's scope objection, Gregory admitted that the broken cable showed signs of deterioration due to lack of lubrication. The court disallowed further questions which, according to plaintiff's offer of proof, would have elicited the opinion that the lack of lubrication contributed to the failure of the cable.

A partner in WS explained that WS entered a financing arrangement with the bank whereby the bank sold its property to WS, then leased the same properties from WS. WS never had possession of the property, as the bank retained full control at all times. The witness admitted that he sat on the bank's board of directors, but neither he nor WS received any notice of the need to replace the cable.

In closing Reliance argued that the cable must have been replaced within a year before the accident. Jacobitz found a dangerously dry cable when he inspected the lift in 1993, but his inspection in 1994 revealed no dangers. Plaintiff argued that the admissions of all responsible parties showed that no one replaced the cable.

Oak Park adopted as its building code the Basic National Building Code recommended by the Building Officials and Code Administrators International, Inc. (the Code). Section 3012.1 of the Code provided:

> "The owner or the owner's legal agent for the building in which the equipment is located shall be responsible for the care, maintenance and safe operation of all equipment covered by this chapter [concerning elevators and lifts] after the installation thereof and acceptance by such owner or agent. The owner or legal agent shall make or cause to be made all periodic tests and inspections and shall maintain all equipment in a safe operating condition as required by this chapter."

The Code defined an owner as "Any person, agent, firm or corporation having a legal or equitable interest in the property."

WS asked the court to instruct the jury:

> "If a landlord either knows about an existing defect on the premises which is not readily apparent, or knows of facts and circumstances which would indicate that there is such a defect, then he must tell his tenant about it. However, a landlord need not warn his tenant about a defect which the tenant could have discovered by a reasonable inspection."

See Illinois Pattern Jury Instructions, Civil, No. 130.01 (3d ed. 1995) (IPI Civil 3d). The court rejected the proposal and instead adopted plaintiff's instruction stating that plaintiff had the burden of proving:

> "Defendant W.S. Partners was negligent in one or more of the following ways:
> (A) Carelessly and negligently failed to inspect the sidewalk freight elevator on said property.

(B) Carelessly and negligently failed to maintain the sidewalk elevator in a safe operating condition in violation of Section 3012.1 of the Village of Oak Park's building code."

See IPI Civil 3d Nos. 20.01, B21.02.01. The court read the Code section to the jury and said:

"If you decide that a party violated the ordinance on the occasion in question, then you may consider that fact together with all other facts and circumstances in evidence in determining whether and to what extent if any *** the party was negligent before and at the time of the occurrence."

See IPI Civil 3d No. 60.01.

After the court denied a motion for a directed verdict on the defense of contributory negligence, plaintiff sought an instruction directing the jury to allocate fault between only Reliance, WS and plaintiff. The court instead accepted defendants' proposal to permit allocation of fault to the bank and EIS also.

During deliberations the jury requested several exhibits. The judge discussed the request with the parties and decided to send nothing back. Shortly after the judge so informed the jurors, they sent a note reiterating the request and specifying the exhibits sought. Without consulting the parties, the judge sent to the jury all the requested exhibits available in court, including the enlarged copy of a portion of Reliance's contract with the bank. The jurors later requested the original of the contract, although that had not been admitted into evidence. The note specified that the jurors could not "read the *** disclaimer" on the enlargement. After sending the document to the jury, the court permitted plaintiff and WS to state for the record their strenuous objections to sending the contract to the jury.

The contract includes the following disclaimer:

"[Reliance] shall not under any circumstances be liable directly or indirectly for any accident, injury, breakage, or damage to the elevators or any machinery, appliances, or property connected therewith—nor shall it under any circumstances be liable directly or indirectly for any accident, injury, or damage to any person or persons whomsoever while riding upon or being in or about said elevators however caused and we agree to insure and to save [Reliance] harmless therefor—nor shall it in any way be liable for any damage caused directly or indirectly by strikes, lockouts, accidents, or other causes beyond its control."

Because no party asked any questions concerning this clause, the parties had no opportunity to argue to the jury about the interpretation and effect of the clause.

The jury returned a verdict against WS but in favor of Reliance, attributing 50% of the negligence to WS, 25% to the bank, 5% to EIS,

20% to plaintiff, and none to Reliance. The jury assessed total damages of $940,000. Following reductions for contributory negligence and the settlements, the court entered judgment against WS for $604,178.87. Both WS and plaintiff appealed from the judgment, and we consolidated the appeals.

Reliance suggests that we should address WS's appeal first, because a decision against WS could render plaintiff's appeal moot. We accept the suggested procedure.

Reliance contends that WS waived most of its arguments by agreeing to let the jury's apportionment of responsibility govern the apportionment for purposes of the counterclaim. WS sought appropriate instructions and presented evidence relevant for determining the relative degrees of fault of the defendants. We do not see how the agreement to this mode of decision on the issues constitutes waiver of the arguments presented. *Cf. Harden v. Playboy Enterprises, Inc.*, 261 Ill. App. 3d 443, 455, 633 N.E.2d 764 (1993).

■ WS advances several grounds for a judgment notwithstanding the verdict. WS contends that it owed no duty to plaintiff or anyone else on the bank's property because it did not retain control over the property. The parties agree that the court stated the applicable law in *Gilbreath v. Greenwalt*, 88 Ill. App. 3d 308, 309-10, 410 N.E.2d 539 (1980):

> "[A] lessor is not generally liable for injuries resulting from defective conditions where premises are wholly demised. [Citations.] Exceptions to the latter rule of nonliability include situations *** where the injury results from the lessor's violation of a statute or ordinance which prescribes a duty for the protection and safety of a class to which a lessee belongs and the harm is of the kind against which the statute or ordinance is designed to protect ***."

■ The trial court held that the Oak Park ordinance adopting the Code prescribed a duty for the protection of a class including plaintiff, and plaintiff presented evidence that WS violated that duty. WS admits that it falls within the Code's broad definition of an owner (see *People v. Chicago Title & Trust Co.*, 75 Ill. 2d 479, 489, 389 N.E.2d 540 (1979)), but it claims that it does not qualify as the owner for purposes of section 3012.1. WS suggests that the Code must mean that the single party in control of the premises has the duty described in section 3012.1, and not every party who meets the broad definition of an owner. In particular, WS relies on the Code's singular reference to "[t]he owner" and argues that only one of the many entities that count in the Code as owners qualifies as "[t]he owner" for section 3012.1.

Illinois statutes provide general guidelines for interpretation, and

courts have applied those guidelines for interpreting ordinances. See *Rippinger v. Niederst*, 317 Ill. 264, 269, 148 N.E. 7 (1925). As a rule, "[w]ords importing the singular number may extend and be applied to several persons or things." 5 ILCS 70/1.03 (West 1994). Accordingly, the reference to "the owner" includes all owners as defined in the Code, including WS.

In *Wright v. Mr. Quick, Inc.*, 109 Ill. 2d 236, 486 N.E.2d 908 (1985), our supreme court restated *Gilbreath*'s general principle of lessor immunity and held that the contract at issue imposed no further duties on the lessor. The court did not discuss any ordinance or statute. WS argues that the Code, as the trial court interpreted it, effectively nullifies the general rule of *Mr. Quick*. While we do not decide the application of the Code to cases not before us, we note that the alleged conflict with a judicial decision provides no grounds for invalidating the ordinance. See *City of Elgin v. County of Cook*, 169 Ill. 2d 53, 63, 660 N.E.2d 875 (1995). We cannot ignore the plain language of the ordinance, which imposes duties upon WS as a firm having an equitable interest in the property.

■ WS maintains that by the lease it effectively delegated its duties to its agent, the bank, and the ordinance plainly contemplates such delegation. The ordinance explicitly refers to the responsibility of "the owner's legal agent." But appropriate delegation of duties does not exonerate a landowner. *Stewart v. Beegun*, 126 Ill. App. 2d 120, 261 N.E.2d 491 (1970). The ordinance imposed a nondelegable duty on WS to maintain the lift in safe operating condition. See Restatement (Second) of Torts § 424 (1965); *Ramirez v. Redevelopment Agency*, 4 Cal. App. 3d 397, 400, 84 Cal. Rptr. 356, 357 (1970); *Gardenvillage Realty Corp. v. Russo*, 34 Md. App. 25, 37, 366 A.2d 101, 109 (1976). An owner may be liable for violation of an ordinance, even if the owner has surrendered possession and control of the premises to a tenant. *Jones v. Polish Falcons*, 244 Ill. App. 3d 348, 353, 614 N.E.2d 397 (1993). In this case, as in *Chicago & Illinois Midland Ry. Co. v. Evans Construction Co.*, 32 Ill. 2d 600, 607-08, 208 N.E.2d 573 (1965), both the landowner and the tenant had nondelegable duties to make the premises safe. We agree with the trial court that the plaintiff must still prove negligence, although the landowner remains liable for the negligence of his agent or an independent contractor hired to perform the nondelegable duty. Restatement (Second) of Torts § 424, Comment *b* (1965).

■ Next, WS contends that it cannot be liable because it received neither actual nor constructive notice of the lift's defects. See *Smolek v. K.W. Landscaping*, 266 Ill. App. 3d 226, 228, 639 N.E.2d 974 (1994). "A possessor of land owes an invitee a duty of exercising reasonable

care to discover dangerous conditions on his land." *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 468, 343 N.E.2d 465 (1976). The owner has constructive notice of all conditions discoverable by reasonable inspection of the premises. See *Todd v. S.S. Kresge Co.*, 303 Ill. App. 89, 100, 24 N.E.2d 899 (1939). A plaintiff may prove constructive notice by establishing that the condition persisted long enough that the defendant should have discovered the condition through the exercise of reasonable care. A principal also has constructive notice of all material facts known to its agent. *Protective Insurance Co. v. Coleman*, 144 Ill. App. 3d 682, 694, 494 N.E.2d 1241 (1986).

■ Here plaintiff presented evidence that an inspector found the cable very dry and rusty, and in need of replacement, in October 1993. The parties most likely to replace the cable admit that they did not do so, and the bank's maintenance supervisor swore that, as far as he knew, the cable was not replaced. Because plaintiff showed that a reasonable inspection did, in fact, reveal the dangerous condition, the jury could find that WS had constructive notice. The evidence also showed that the condition remained uncorrected for more than a year prior to the accident. Moreover, WS argued that the bank acted as its agent for purposes of maintaining the property, and no one denies that Oak Park sent the bank notice of the dangerous condition more than a year prior to the accident. The jurors could find that the bank received the notice, despite its officer's testimony that he had no recollection of receiving it. Under WS's attribution of agency, the notice to the bank constituted constructive notice to WS of the condition. We find sufficient evidence of constructive notice. The absence of actual notice from the bank or the inspector to WS helps WS only in its actions against those parties and not in its defense to plaintiff's claim.

■ WS also seeks entry of judgment in its favor on grounds that the evidence cannot support the verdict. Witnesses gave differing interpretations to the "no passengers" sign, and plaintiff's coworker explained in detail why, in some circumstances, he or plaintiff needed to ride on the lift. No one told plaintiff that he could not ride on the lift or that the lift was dangerous. But plaintiff never asked why the lift had the "no passengers" sign. The conflicting evidence presents a triable issue concerning plaintiff's contributory negligence. See *Bitner v. Central Illinois Light Co.*, 75 Ill. App. 3d 715, 720-21, 394 N.E.2d 492 (1979).

The bank had a contractual duty to maintain the property, and the bank hired an appropriate company to maintain the lift. But the failures of the bank and the maintenance company do not establish a defense for WS against plaintiff's claim. Rather, they establish grounds for WS's counterclaims. The owner's duty, under the ordinance, to

maintain the property leaves it potentially liable. On this record a verdict for plaintiff against WS could stand. Accordingly, we will not direct the trial court to enter a judgment in favor of either WS or plaintiff on the defense of contributory negligence. See *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504 (1967).

■ In support of its request for the alternative relief of a new trial, WS argues that the trial court committed reversible error by sending a photocopy of Reliance's contract with the bank to the jury during deliberations, without consulting the parties, and by sending the original contract to the jury over objection. In *Griffin v. Subram*, 238 Ill. App. 3d 712, 606 N.E.2d 560 (1992), the trial court similarly sent to the jury, without consulting the parties, prejudicial documents that had not been admitted into evidence. The appellate court held that the "unilateral decision to provide the jury with the challenged exhibit in and of itself must be deemed reversible error." *Griffin*, 238 Ill. App. 3d at 718.

Here, after sending the exhibits to the jury without consulting the parties, the court also sent to the jury, over objection, the original contract, including the highly prejudicial exculpatory clause. The clause, on its face, appears to preclude imposition of liability against Reliance, regardless of the cause of the accident. But in *Shorr Paper Products, Inc. v. Aurora Elevator, Inc.*, 198 Ill. App. 3d 9, 555 N.E.2d 735 (1990), the court interpreted an essentially identical clause to mean that the maintenance company in that case, Aurora:

> "is not a general guarantor of the elevator's reliability. Its service agreement, in other words, did not place the ultimate burden of maintaining the elevator, whatever the cause of a breakdown might be, on Aurora ***. Aurora's obligation under the agreement was merely to perform the services specified, namely, to inspect, oil and grease the elevator. While the agreement insulates Aurora from general responsibility for structural damage to the elevator, we do not believe that the exculpatory clause protects Aurora from liability for any damages directly caused by its failure to perform its specified service obligations sufficiently." *Shorr Paper*, 198 Ill. App. 3d at 13-14.

Interpreted in this way, the clause did not conflict with the statutory prohibition against indemnification for one's own negligence. *Shorr Paper*, 198 Ill. App. 3d at 12. Because the court here first presented this clause to the jury after the close of the evidence, the parties had no opportunity to explain to the jury the legal effect of the clause or how Reliance might be liable for its own negligence despite the clause.

The jury sought the original contract, which was not in evidence, specifically in order to read the exculpatory clause. The trial court's

decision to give the jury the document prejudicially permitted the presentation of new evidence in a manner that avoided evidentiary constraints and cross-examination. See *Modelski v. Navistar International Transportation Corp.*, 302 Ill. App. 3d 879, 884, 707 N.E.2d 239 (1999). Accordingly, we hold that the trial court committed reversible error by sending the contract to the jury.

Plaintiff asks us to affirm the judgment against WS and reverse only to permit WS to proceed on its counterclaim against Reliance for contribution. We must refuse the request. The error affected the percentages of fault attributed to plaintiff and WS. We cannot determine whether the jury would attribute more than 25% of the total fault to WS but for the error. If the fault attributable to WS falls short of 25%, then WS is liable to plaintiff for nonmedical damages only severally, and not jointly. See 735 ILCS 5/2—1117 (West 1994); *Lilly v. Marcal Rope & Rigging, Inc.*, 289 Ill. App. 3d 1105, 1107, 1112, 682 N.E.2d 481 (1997). The erroneous submission of exhibits to the jury without consulting the attorneys, followed by the erroneous presentation to the jury of a highly prejudicial document not admitted into evidence, prejudiced WS in both its counterclaim against Reliance and in plaintiff's suit against WS. Therefore, on the appeal of WS, we reverse the judgment and remand the cause for a new trial.

■ We address plaintiff's appeal, and other arguments WS raises, only insofar as they may arise again in much the same posture on remand. Plaintiff contends that the court should not permit defendants to argue that the lift did not count as a sidewalk elevator for purposes of the Code. Plaintiff showed that if the lift was an elevator, it was a sidewalk elevator by the definition given in the Code. But Reliance's expert, Gregory, swore that the lift did not qualify as an elevator because it lacked requisite cables, switches and gates. On this record we cannot say that the testimony must be wrong. Unless plaintiff convincingly demonstrates that the precise meaning of "elevator," for purposes of the Code, includes this lift, the court should permit all parties to present evidence supporting their theories on that issue and the related issue of whether applicable standards permit operators to ride such lifts. Even if operators generally may ride similar lifts, the court should permit defendants to present evidence that plaintiff acted negligently by riding this particular lift.

■ Without citation to authority, plaintiff also asks us to foreclose defendants from arguing that Jacobitz' and Bush's inspections after October 1993 show that the old cable must have been replaced before the accident. While defendants face the strong contrary evidence that all of the parties most involved admitted that they did not replace the cable, we see no reason to foreclose the inference defendants argued at

trial. See *Lecroy v. Miller*, 272 Ill. App. 3d 925, 933, 651 N.E.2d 617 (1995).

The trial court permitted Bush to testify, as an expert, that the lift encountered an obstruction, causing the cable to break, and the condition of the cable did not contribute to the accident.

> "[A]n individual will be permitted to testify as an expert if his experience and qualifications afford him knowledge which is not common to lay persons and where such testimony will aid the trier of fact in reaching its conclusion. [Citation.] The burden of establishing the qualifications of an expert witness is on the proponent of his testimony, and it is within the discretion of the trial court to determine whether the witness has been qualified. [Citation.] Further, in rendering an opinion, the expert must rely upon scientific theories which have gained general acceptance in his field." *People v. Jordan*, 103 Ill. 2d 192, 208, 469 N.E.2d 569 (1984).

In *Kleiss v. Cassida*, 297 Ill. App. 3d 165, 696 N.E.2d 1271 (1998), the plaintiff presented the testimony of a chemical damage consultant with more than 20 years of experience in investigating chemical damage to crops. In his opinion the defendant's chemical caused plaintiff's damages. The court noted that the consultant "provided no reasoned analysis for any of his conclusions, supporting them only based on his work experience." *Kleiss*, 297 Ill. App. 3d at 170. The trial court initially allowed the testimony, but after the jury returned a verdict in favor of the plaintiff, the court struck the expert testimony and entered judgment notwithstanding the verdict for the defendant. The appellate court said:

> "An expert opinion is only as valid as the reasons for the opinion. [Citation.] When an expert testifies simply that plaintiff should win but is unable to support that conclusion with reasoned analysis, the expert's testimony is worthless, provides no assistance to the jury, and should be stricken." *Kleiss*, 297 Ill. App. 3d at 174.

Bush's testimony similarly lacks any reasoned basis or support from scientific theories that have gained general acceptance in the field. He pointed to no facts about the cable or its break to support his opinion that wear, use, and lack of lubrication must have had no effects leading to the accident, effectively testifying simply that defendants should win. Bush's experience, without more, is insufficient to make his unsupported, unscientific opinions admissible. On remand, the trial court should preclude Bush from testifying regarding the cause of the accident or offering any other testimony in the nature of expert opinion.

●10 Relying on *Lilly*, 289 Ill. App. 3d 1105, 682 N.E.2d 481, plaintiff contends the court should not have included EIS and the

bank, plaintiff's employer, on the verdict form. In *Lilly* the trial court included both the defendant and the plaintiff's employer on the verdict form; the jury attributed 10% of the fault causing the plaintiff's injury to the defendant and 90% of the fault to the plaintiff's employer. The trial court held the defendant liable for all of the damages, with a set-off for the employer's workers' compensation payments. The appellate court affirmed. For purposes of the joint liability law, section 2—1117 of the Code of Civil Procedure (735 ILCS 5/2—1117 (West 1994)), the court should not take the employer's percentage of fault into account when determining whether the defendant is responsible for more than 25% of the fault of the parties listed in section 2—1117. *Lilly*, 289 Ill. App. 3d at 1117. The court did not find any error in the inclusion of the plaintiff's employer on the verdict form.

The court in *Blake v. Hy Ho Restaurant, Inc.*, 273 Ill. App. 3d 372, 652 N.E.2d 807 (1995), affirmed the trial court's decision to omit the settling defendants from the verdict form. The court focused on application of section 2—1117 and the propriety of protecting settling defendants from the expense of discovery.

Here, the jury determined both plaintiff's rights against the defendants and the rights of the defendants on WS's counterclaim for contribution. In a contribution action, the parties have a right to attribution of fault to nonparties subject to liability in tort. *Truszewski v. Outboard Motor Marine Corp.*, 292 Ill. App. 3d 558, 685 N.E.2d 992 (1997). A party may have a right to contribution if it paid an amount in excess of its *pro rata* share of the common liability, and the fault of all persons subject to liability in tort for the injury controls the determination of whether the defendant's payments have exceeded that *pro rata* share. *Truszewski*, 292 Ill. App. 3d at 561-62.

The court in *Truszewski* relied in part on *Bofman v. Material Service Corp.*, 125 Ill. App. 3d 1053, 466 N.E.2d 1064 (1984). In *Bofman* the appellate court reversed a judgment holding the plaintiffs responsible for 82% of the negligence that caused their injuries. The court found that the jury apparently either failed to consider the negligence of nonparties or it attributed that negligence to the plaintiffs. The court said:

> "Consideration of the negligence of both parties and nonparties to an action is essential for determining liability commensurate with degree of total fault. \*\*\*
>
> \*\*\* The purpose of considering the liability of nonparty tortfeasors is not \*\*\* to limit defendant's share of responsibility, but to determine the extent of plaintiff's responsibility for his own injuries. \*\*\* Defendants remain jointly and severally liable for that portion of damages for which each plaintiff is *not* responsible,

regardless of whether some of those damages are attributable to a nonparty." (Emphasis in original.) *Bofman*, 125 Ill. App. 3d at 1064.

Accordingly, inclusion of nonparties and settling defendants on the verdict form helps protect the plaintiff's right to an appropriate attribution of his own fault, as well as protecting the defendants' interests in their right to contribution. *Lilly* and *Blake* establish guidelines for using the attributions of fault for purposes of determining whether the defendants meet the 25% threshold of responsibility requisite for joint liability. Even though the court should include the bank and other settling defendants on the verdict form, it should consider the fault of only those parties specified in section 2—1117 for purposes of determining joint liability. Following *Blake*, the court should not subject the settling defendants to the expense of discovery, although the parties remain free to present any available evidence concerning the fault of the nonparties.

Plaintiff cites *Jardine v. Rubloff*, 73 Ill. 2d 31, 382 N.E.2d 232 (1978), and *Cobb v. Marshall Field & Co.*, 22 Ill. App. 2d 143, 159 N.E.2d 520 (1959), in support of his argument that WS counted as a common carrier, with a duty to exercise the highest degree of care. The court in *Cobb* relied on *Carson v. Weston Hotel Corp.*, 351 Ill. App. 523, 115 N.E.2d 800 (1953). In that case the court specifically held that the lessee in full control of the premises had the duties of a common carrier of elevator passengers, but the owner who leased the premises did not. Subsequent case law has not overruled *Carson*. Because WS, by the lease, surrendered all control over the premises to the bank, only the bank has the duties of a common carrier. WS cannot avoid its statutory duties by lease, but the lease in this case relieves it of responsibility as a common carrier.

Finally, WS contends that the trial court should have given IPI Civil 3d No. 130.01 rather than IPI Civil 3d No. 60.01. The instruction WS proposed guides consideration of a landlord's duty to warn a tenant about latent defects in the property. Plaintiff advanced no theory predicated on a duty to warn. Instead, the trial court properly instructed the jury on plaintiff's theory that WS violated a duty, imposed by ordinance, to maintain the lift in safe condition, and violation of that duty constituted *prima facie* evidence of negligence. The instruction given fairly informed the jury of the law applicable to plaintiff's claim. See *Carey v. J.R. Lazzara, Inc.*, 277 Ill. App. 3d 902, 908, 661 N.E.2d 413 (1996).

WS did not waive any of the arguments raised in its brief by agreeing to let the jury's allocation of fault determine the allocation of liability for purposes of the counterclaim for contribution. Oak Park's

ordinance imposes on WS a duty to maintain in safe operating condition any lifts or elevators in buildings it owns. Plaintiff presented sufficient evidence to show that WS had constructive notice of the dangerous condition of the sidewalk lift. The parties presented conflicting evidence, enough to create a contested issue of material fact, concerning plaintiff's contributory negligence. Therefore, the trial court correctly denied WS's motion for judgment notwithstanding the verdict.

The trial court committed prejudicial error by sending back to the jury a document, not admitted into evidence, that contained misleading language apparently eliminating the liability of Reliance. The court should also preclude Thomas Bush from offering his opinion concerning the cause of the accident. The court committed no error by including two of the settling defendants on the jury verdict form, permitting the jury to weigh the extent to which their alleged negligence contributed to the injuries. We remand for a new trial in accord with this opinion.

Reversed and remanded.

COUSINS, P.J., and McBRIDE, J., concur.