NO. 5-96-0153

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_________________________________________________________________

DAVID LILLY,                             )  Appeal from the

                                         )  Circuit Court of

     Plaintiff-Appellee,                 )  Madison County.

                                         )

v.                                       )  No. 90-L-719

                                         ) 

MARCAL ROPE AND RIGGING, INC.,           )

                                         )

     Defendant and Third-Party Plaintiff-)

     Appellant,                          )

                                         )

v.                                       )

                                         )

GRANITE CITY STEEL CORPORATION,          )  Honorable

                                         )  A. A. Matoesian,

     Third-Party Defendant.              )  Judge, presiding.

_________________________________________________________________

JUSTICE CHAPMAN delivered the opinion of the court:

This personal injury case arises from the use of an American Hoist locomotive crane on December 18, 1989.  The plaintiff, David Lilly, an employee at Granite City Steel, claimed that when one of the crane's pendant cables failed, he was severely injured.  Lilly sued Marcal Rope and Rigging (Marcal) and Bethlehem Steel on both negligence and product liability theories.  Lilly dismissed his cause of action against Bethlehem Steel at trial.  Marcal filed a third-party complaint against Granite City Steel for contribution.  The jury returned a verdict in Lilly's favor for $1,200,005.  On the contribution action, the jury attributed 90% of the fault to Granite City Steel and 10% of the fault to Marcal.  

Marcal raises two points on appeal.  We will first address an issue of first impression:  is a plaintiff's employer a "third party defendant who could have been sued by the plaintiff" under the provisions of the joint liability law, section 2-1117 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1117 (West 1994))?  The second issue is whether the evidence supported the jury's verdict on the negligence and product liability counts.  

Marcal asks that we reduce the judgment because section 2-1117 makes it severally liable since on the contribution action the jury found it only 10% responsible for Lilly's injuries.  Lilly contends, however, that the jury's finding that Marcal was 10% responsible on the contribution action does not entitle Marcal to relief from joint liability because Granite City Steel was not "a third party defendant who could have been sued by the plaintiff" under the terms of section 2-1117.  Therefore, Lilly contends, the jury's attribution of 90% of the fault to Granite City Steel under the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/2 (West 1996)) cannot be used to bring Marcal's responsibility below the 25% level contemplated by section 2-1117.  The question which must be answered is whether Lilly's employer is included in the phrase "any third party defendant who could have been sued by the plaintiff" in the joint liability provision. 

The pertinent portion of the first statute to be considered, section 2-1117 of the Code, the joint liability law, is:

"Any defendant whose fault *** is less than 25% of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, 
and any third party defendant who could have been sued by the plaintiff
, shall be severally liable for all other damages."  (Emphasis added.)  735 ILCS 5/2-1117 (West 1994).

The second statute involved is the exclusivity provision of the Workers' Compensation Act, section 5(a), which provides:

"No common law or statutory right to recover damages from the employer *** for injury or death sustained by any employee 
other than the compensation herein provided
, is available to any employee who is covered by the provisions of this Act ***."  (Emphasis added.)  820 ILCS 305/5(a) (West 1996).

If we were to examine only these two statutes and the cases which have uniformly barred recipients of workers' compensation benefits from bringing a direct action against their employers because of the exclusive-remedy language of section 5(a) (
Wells v. Enloe
, 282 Ill. App. 3d 586, 669 N.E.2d 368 (1996); 
Laird v. Baxter Health Care Corp.
, 272 Ill. App. 3d 280, 650 N.E.2d 215 (1994)), we would conclude that the employer is clearly not a "third party defendant who could have been sued by the plaintiff."  However, Marcal contends that a third statute, the Contribution Act, and the supreme court's interpretation of it in 
Doyle v. Rhodes
, 101 Ill. 2d 1, 461 N.E.2d 382 (1984), require the employer to be included within those "third party defendants who could have been sued by the plaintiff" under section 2-1117.

The relevant portion of the Contribution Act provides:

"Right of Contribution.  (a) where two or more persons are 
subject to liability in tort
 arising out of the same injury, there is a right of contribution among them."  (Emphasis added.)  740 ILCS 100/2 (West 1996).  

Marcal contends that since 
Doyle
 held that employers are within the class of those "subject to liability in tort" under the Contribution Act, it must follow that employers are within the class of those "who could have been sued by the plaintiff" under section 2-1117.  We disagree with this contention for several reasons.

First, when the legislature passed section 2-1117, it did not use the phrase "subject to liability in tort."  If the legislature had wanted to achieve the same result in section 2-1117 that it had provided for in the Contribution Act (and that the supreme court had specifically recognized in 
Doyle
), it would have used the same language.  When statutes are enacted after judicial opinions are published, it must be presumed that the legislature acted with knowledge of the prevailing case law.  
People v. Hickman
, 163 Ill. 2d 250, 262, 644 N.E.2d 1147, 1153 (1994).  Therefore, the defendant's attempt to extend 
Doyle
 to the language of section 2-1117 is less than persuasive. 

The presumption of legislative knowledge of judicial opinions is of particular importance in this area both because of the multitude of Illinois Supreme Court cases that have recognized that section 5(a) prohibits suits by employees against employers and because of the language used in these cases:

"Section 5(a) 
bars
 a common law action by an employee against his employer for injuries received in the course of his employment and it also bars a statutory action against his employer for his wrongful death."  (Emphasis added.)  
Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.
, 13 Ill. 2d 460, 150 N.E.2d 141, 143 (1958).

Although the above quote is from 1958, similar language can be found in Illinois Supreme Court cases for the last 40 years.  
Ramsey v. Morrison
, 175 Ill. 2d 218, 676 N.E.2d 1304 (1997); 
Page v. Hibbard
, 119 Ill. 2d 41, 518 N.E.2d 69 (1987); 
Chmelik v. Vana
, 31 Ill. 2d 272, 201 N.E.2d 434 (1964); 
O'Brien v. Rautenbush
, 10 Ill. 2d 167, 139 N.E.2d 222 (1956).

The point that is made by these cases is that it is not just 
Doyle
 that the legislature is presumed to be aware of; it is also the other cases, 
all
 of which had held that an employer is not one who "could have been sued by the plaintiff."  If the legislature had intended to include employers within the class of those who could have been sued by the plaintiff for purposes of the joint liability law, it clearly would have used the one phrase that would have insured their inclusion:  "subject to liability in tort."  The legislature's use of a different phrase, a phrase which has never been held to allow employers to be sued by injured employees, supports our conclusion that the legislature did not intend to include employers in that class in the joint liability law.

The second reason for our conclusion is found in a close reading of 
Doyle
.  We begin by examining the actual question that 
Doyle
 decided, which was not whether injured employees can sue their employers, but, in the language of 
Doyle
:

"
whether the immunity of an employer from an action
 at law 
by an injured employee
 provided by sections 5(a) and 11 of the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, pars. 138.5(a), 138.11) 
also bars an action for contribution against the employer by a third party
 ***."  (Emphasis added.)  
Doyle
, 101 Ill. 2d at 4, 461 N.E.2d at 383-84.

Two things should be noted from the supreme court's statement of the issue it was addressing in 
Doyle
.  First, and most important, it was not addressing the question of whether an employee could maintain a direct action against his or her employer; it was addressing the question of whether a third-party defendant could maintain a contribution action against the employer.  Second, in the first emphasized portion of the question it was going to resolve, the supreme court recognized the inability of employees to bring actions against their employers.

The supreme court's statement of the issue before it in 
Doyle
 is not the only part of the opinion that indicates that the court was examining the meaning of "subject to liability in tort" 
only
 in the context of contribution actions.  First, the statement of the issue is repeated by the court just after its description of the procedural background of the case:

"We address first the third-party defendant's contention that its statutory immunity under sections 5(a) and 11 of the Workers' Compensation Act from tort actions by its employees also immunizes it from this claim under the Contribution Act."  
Doyle
, 101 Ill. 2d at 6, 461 N.E.2d at 384.

In addition, in rejecting the holding of 
Lake Motor Freight, Inc. v. Randy Trucking, Inc.
, 118 Ill. App. 3d 626, 455 N.E.2d 222 (1983), 
Doyle
 recognized a distinction between contribution statutes that required 
joint liability
 or 
actual liability on a tort theory
 and the Illinois Contribution Act, which "requires only that the parties be `subject to liability in tort arising out of the same injury.'"  
Doyle
, 101 Ill. 2d at 12, 461 N.E.2d at 387.

Further, although 
Doyle
 discusses an employee's theoretical ability to file a claim against his or her employer, it is clear from 
Doyle's
 concluding language on this point that the supreme court was focusing on the ability of third-party defendants to maintain actions against the employer under the Contribution Act:

"[W]e conclude that the Contribution Act focuses, as it was intended to do, 
on the culpability of the parties rather than on the precise legal means by which the plaintiff is ultimately able to make each defendant compensate him for his loss
."  (Emphasis added.)  
Doyle
, 101 Ill. 2d at 14, 461 N.E.2d at 388.

Indeed, the emphasized language in the last quote suggests the supreme court's recognition that there may well be different factors to consider between the Contribution Act's concern over the relative culpability of defendants and the plaintiff's ability to collect from among those defendants. 

Finally, the actual holding of 
Doyle
 is in no way a recognition that injured workers can sue their employers:

"Consequently, 
we hold
 that, 
under the Contribution Act, the employer's immunity from a suit in tort by its employee as plaintiff
 is not a bar to a claim for contribution against it by a defendant held liable to such a plaintiff."  (Emphasis added.)  
Doyle
, 101 Ill. 2d at 14, 461 N.E.2d at 388.

Instead, 
Doyle
, in its actual holding:

(1) limited its interpretation of "subject to liability in tort" to the Contribution Act, and 

(2) as the emphasized language establishes, specifically recognized that an employer was immune from suit in tort by its employees.

As indicated earlier, the conclusion and the actual holding of 
Doyle
 are important for another reason:  they, at least implicitly, recognize that there may be different concerns that are to be addressed depending upon whether the legislature is concerned with contribution among joint tortfeasors or the allocation of responsibility among defendants against whom the plaintiff has obtained a judgment.  

In examining that question, we must remember that, although the joint liability law and the Contribution Act share some elements, they are concerned with two different issues and two different time frames.  

The joint liability law is a limitation on the plaintiff's ability to recover from defendants, each of whom has been found to be the proximate cause of plaintiff's injuries and is therefore responsible for all the damages done to the plaintiff.  The joint liability law, however, provides a limitation on the amount the plaintiff can recover from defendants whose comparative culpability 
to one another
 is less than 25% of the total culpability.  The significant time frame of the joint liability law is after the judgment and 
before collection by the plaintiff
.  The significant time for the Contribution Act is 
after collection by the plaintiff
.   If the plaintiff always collected from the defendants in accordance with the jury's assessment of their respective culpabilities under the Contribution Act, it would never come into play; it is only when the plaintiff collects the judgment in a manner inconsistent with the jury's determination of responsibility under the Contribution Act that any action under it is necessary.   Under the common law, defendants who were jointly and severally liable were each responsible for all the damages sustained by a plaintiff.  Of course, this did not mean that the plaintiff could recover the full measure of damages from each defendant; such a procedure was barred by restrictions against double recovery.  It did mean, however, that in a case involving three jointly liable defendants, a plaintiff could recover 50% of the damages from each of two of the defendants or 33⅓% of the damages from each of the three defendants or 100% of the damages from only one of the defendants.  This ability of the plaintiff to pick and choose was not inequitable when viewed as between the plaintiff and the defendants because, after all, each of the liable defendants had been found to be a sufficient cause of the plaintiff's injury to be responsible for 100% of the plaintiff's loss.  W. Prosser, Torts §52, at 347 (5th ed. 1984); see also 
Coney v. J.L.G. Industries, Inc.
, 97 Ill. 2d 104, 454 N.E.2d 197 (1983).

The real inequity that occurred when the plaintiff chose to collect 100% of the damages from only one of the defendants was not an inequity between the plaintiff and that defendant.  The inequity arose because that defendant was unable to recover in an appropriate manner from the other defendants whose conduct was more culpable than his when the conduct of the defendants was compared.  This inability of defendants to recover from one another led to the supreme court's decision in 
Skinner v. Reed-Prentice Division Package Machinery Co.
, 70 Ill. 2d 1, 374 N.E.2d 437 (1977).

In pre-
Skinner
 days, if a plaintiff obtained a judgment for $100,000 against three defendants, A, B, and C, and decided to collect it all from defendant A, defendant A had no right to seek contribution from either B or C.  Defendant A might, depending on the circumstances, be able to maintain an indemnification action against either B or C, or perhaps both of them, but 
Skinner
 recognized that indemnification was a crude tool at best because it was an all-or-nothing proposition.  Either A recovered from B and/or C all of the judgment it had paid to the plaintiff or A recovered nothing.  Since the relative culpabilities of the multiple defendants were rarely so clearly delineated, indemnification was not really a satisfactory tool.  
Skinner
 recognized the unsatisfactory state of the law, recognized that defendants should be allowed to recover from one another based upon their culpability, and allowed contribution to occur.  The Contribution Act codified 
Skinner
 and is concerned with defendants' rights 
vis-a-vis
 other defendants.  

As 
Doyle
 held, this ability of defendants to recover from one another in amounts proportionate to their relative culpabilities includes the ability to recover from the employer, who, under 
Doyle
, is "subject to liability in tort" within the meaning of the Contribution Act.  Obviously, the supreme court has determined that a relatively expansive reading of "subject to liability in tort" was necessary to allow defendants to equitably adjust their relative culpabilities depending upon the collection choices of the plaintiff.  The expansive reading of 
Doyle
 was later curtailed by 
Kotecki v. Cyclops Welding Corp.
, 146 Ill. 2d 155, 585 N.E.2d 1023 (1991), which limited the responsibility of the employer in such actions to the amount of its workers' compensation lien.  

Is a similar expansive reading needed to achieve the purposes of section 2-1117, the joint liability law?  Obviously, the statute restricts a plaintiff's common law rights, and thus it should be strictly construed.  
Summers v. Summers
, 40 Ill. 2d 338, 342, 239 N.E.2d 795, 798 (1968); see also 
American Ambassador Casualty Co. v. City of Chicago
, 205 Ill. App. 3d 879, 563 N.E.2d 882 (1990).  Under the 1986 version of section 2-1117, which applies to this case, the plaintiff was no longer able to collect 100% of the nonmedical portions of a judgment from any defendant unless that defendant's fault was more than 25% of the total fault of certain enumerated parties who were involved in producing the injury.

The question that must be answered is, Whose fault is to be counted in determining whether any particular defendant's fault exceeds 25% of the total?  Obviously, the defendants sued by the plaintiff would be included, and the statute says that.  The legislature has also determined that the plaintiff's fault should be included: "the total fault attributable to 
the plaintiff
, defendants sued by the plaintiff, and ***."  (Emphasis added.)  735 ILCS 5/2-1117 (West 1994).

What about the third category that the legislature included and that is obviously the focus of this appeal:  "any third party defendant who could have been sued by the plaintiff"?  Did the legislature intend to include the plaintiff's employer within that description?  As has been indicated earlier, the failure of the legislature to use the phrase "subject to liability in tort" from the Contribution Act, a phrase which had already been construed to include the employer, strongly suggests that it did not.  When the failure to use the "subject to liability in tort" language is coupled with the section 5(a) language of the Workers' Compensation Act and the strong and the repeated pronouncements of the supreme court that employees are not allowed to sue their employers because of section 5(a), this strong suggestion becomes almost a certainty.

In addition to the background of the Contribution Act, 
Doyle
, section 5(a), and the multitude of cases under section 5(a), there is a third basis for our decision: the words of the statute itself suggest that the employer should not be included.  If, as the defendant contends, the legislature meant to include the employer (and anyone else who might be immune to suit), even though that employer or that spouse or the United States of America would be immediately successful on a section 2-619 motion to dismiss because of the appropriate immunity, then we must conclude that the legislature was speaking of theoretical actions.  "Could have been sued" in that context is reduced to meaning "Could plaintiff physically file a piece of paper naming a party as a defendant?"  Certainly, a plaintiff can physically do that.  A plaintiff can name anyone as a defendant--himself, his wife, his pet iguana, his State, his God, or his employer.  And all are immune from his suit.  Should we conclude that the legislature meant such a ridiculous result?

Our answer to the question is suggested by the question itself, but that is not the only basis for the answer.  In addition, it must be remembered that, in the same tort reform package that contained the restriction on joint liability, there was also a provision which penalized any party who filed a pleading which was not:  

"after reasonable inquiry *** well grounded in fact and warranted by existing law or good faith argument for the extension, modification, or reversal of existing law ***."  Ill. Rev. Stat. 1986 Supp., ch. 110, par. 2-611.

The only basis that could support even a theoretical claim against plaintiff's employer was the supreme court's 
dicta
 in 
Doyle
 which interpreted the Contribution Act.  Therefore, it is significant to note that the same Contribution Act provides:

"Rights of plaintiff unaffected.  
A plaintiff's right to recover the full amount of his judgment
 from any one or more defendants *** 
is not affected by the provisions of this Act
."  (Emphasis added.)  740 ILCS 100/4 (West 1994).

Our fourth and final reason for our conclusion is found in this early legislative statement that the Contribution Act should not affect plaintiffs' rights to recover the full amount of the damages.  The statement is a recognition of the differences between the concepts behind the two statutes, a recognition that has also been described by legal commentators:

"All of these statements reflect a fundamental confusion between each defendant's individual full responsibility for the damages that she tortiously caused and the comparative responsibility percentages that are obtained by comparing the defendants' individual full responsibilities for the injury.  Neither defendant in either of these situations was merely `50% negligent' or `50% responsible.'  Such statements make as much sense as saying that someone is `50% pregnant.'"  Nor did either defendant's negligence cause or occasion only 50% of the plaintiff's injury.  Rather, each defendant was 100% negligent, each defendant's negligence was an actual and proximate cause of 100% of the injury, and each defendant therefore is fully responsible for the entire injury.  Only when we compare their individual full responsibilities, and assume that they were equally negligent, does it make sense to say that each defendant, 
when compared to the other
, bears 50% of the total comparative responsibility for the injury."  (Emphasis added.)  R. Wright, 
The Logic and Fairness of Joint and Several Liability
, 23 Memphis St. U.L. Rev. 45, 56 (1992) (Wright).

As the legislature realized when it passed the Contribution Act, and as Professor Wright cogently points out, the Contribution Act is concerned with sorting out the relative rights of multiple defendants 
after the plaintiff has collected from among those defendants who are each fully responsible for all of his damages.  To illustrate this point, Professor Wright uses as an example two defendants, each of whom put enough poison into the plaintiff's coffee to kill her.  Clearly, each defendant's conduct would be sufficient by itself to cause plaintiff's death, and the plaintiff would be entitled to collect 100% of the damages from either defendant.  Professor Wright then modifies his hypothetical to highlight the different interests involved in contribution claims.   "Assume in the coffee drinker hypothetical that the first defendant 
deliberately
 put enough poison in the coffee cup to kill the coffee drinker, while the second 
negligently
 put the same amount in, so that the first defendant's comparative responsibility might be set at 90% and the second defendant's at 10%.  Can it really be that the first defendant, despite deliberately putting sufficient poison in the cup to kill the coffee drinker regardless of what the second defendant did, as a matter of logic or justice is only `90% responsible' for the coffee drinker's death and thus should receive only 90% of the specified criminal punishment for murder (e.g., a 90% capital punishment) and be liable in tort for only 90% of the damages caused to the coffee drinker's survivors or estate?  Can it really be that the second defendant, despite negligently putting enough poison in the cup to kill the coffee drinker regardless of what the first defendant did, is only `10% responsible' for the coffee drinker's death and thus is only liable for 10% of the damages caused to the coffee drinker's survivors or estate, even if for some reason no damages can be obtained from the first defendant?

* * *

The tortfeasor who initially pays the plaintiff has an equitable restitutionary (unjust enrichment) claim against the other tortfeasors for contribution or indemnity based on their comparative responsibility for the injury. If she cannot obtain contribution from another tortfeasor because he is immune, insolvent or otherwise unavailable, this does not mean that she is being held liable for more than she tortiously caused, for more than she is responsible, for the other's tortious actions, or for his portion of the damages.  Whether or not she can obtain contribution, she is individually fully liable to the plaintiff for all the damages that were the actual and proximate result of her tortious behavior.  Her paying for all these damages fulfills her own responsibility to the plaintiff; it is not a shifting to her of the unavailable tortfeasor's responsibility.  If one of the tortfeasors ends up paying all or a disproportionate share of the damages due to the immunity, insolvency, or unavailability of another tortfeasor, an unfair result unquestionably has occurred.  But the unfairness exists only in the context of the first tortfeasor's equitable restitutionary claim against the other tortfeasor for contribution, which is secondary to the plaintiff's prior and independent corrective justice claim against each tortfeasor, who is individually fully responsible for the plaintiff's injury. 

A plaintiff necessarily faces the risk that any particular tortfeasor from whom he attempts to recover his damages may be immune, insolvent, or otherwise unavailable.  
The immunity or insolvency of one tortfeasor, however, does not, as the critics of joint and several liability sometimes argue, provide any reason or justification for limiting the plaintiff's right to obtain full recovery from a different solvent and available tortfeasor, who is individually fully responsible for the plaintiff's injury.  Indeed, such a limitation would be an unjustified shifting of the unavailable tortfeasor's formal or `de facto' immunity to the available tortfeasor, who has no such immunity
."  (Emphasis added.)  Wright, 23 Memphis St. U.L. Rev. at 60-62.

The individual responsibility of concurrent actors for the entire injury has also been recognized by the supreme court.  In 
Coney v. J.L.G. Industries, Inc.
, 97 Ill. 2d 104, 121-22, 454 N.E.2d 197, 205 (1983), the court stated:

"A concurrent tortfeasor is liable for the whole of an indivisible injury when his negligence is a proximate cause of that damage.  In many instances, the negligence of a concurrent tortfeasor may be sufficient by itself to cause the entire loss.  The mere fact that it may be possible to assign some percentage figure to the relative culpability of one negligent defendant as compared to another does not in any way suggest that each defendant's negligence is not a proximate cause of the entire indivisible injury."  

Just as the Contribution Act does not come into play until the plaintiff has collected more than a 
pro rata
 share from a defendant, so, too, the joint liability law does not come into play 
until a plaintiff has obtained a judgment against a defendant
.  Therefore, in order to determine whether "any third party defendant who could have been sued by the plaintiff" should include the plaintiff's employer, the relevant inquiry is not whether there is a theoretical or philosophical possibility of suing the employer at the outset, but whether the plaintiff could obtain a judgment against an employer.  The judgment is the relevant time of inquiry under the joint liability law.  Could a plaintiff obtain a judgment?  If the employer did not raise the exclusivity provisions of section 5(a), presumably he could.  If the plaintiff did obtain such a judgment, then it would be fair to allow that judgment, and the jury's assessment of the employer's culpability, to be included in the section 2-1117 equation of allocation.  If, however, it was not the plaintiff but a third-party plaintiff who obtained the judgment, as will universally be the case in the real world, then the allocation provisions of section 2-1117 should not include the plaintiff's employer. 

Is this result unfair to the defendant?  If the employer's conduct is not considered for purposes of the allocation of responsibility under section 2-1117, or if a settling defendant's conduct is not considered, or if any immune defendant's conduct is not considered, what is the practical effect?  Taking the settling defendant's conduct first, it is clear that the remaining defendants' rights under section 2-1117 have not been abridged.  The argument that the nonsettling defendants are entitled to keep the settling defendants in the case so as to hopefully reduce their own percentage of allocation of responsibility below the 25% level of section 2-1117 has been rejected.  
Snoddy v. Teepak, Inc.
, 198 Ill. App. 3d 966, 556 N.E.2d 682 (1990); 
cf. Lannom v. Kosco
, 158 Ill. 2d 535, 634 N.E.2d 1097 (1994).  As 
Snoddy
 indicates, the nonsettling defendants' responsibility is reduced by the amount already paid by the settling defendant.  In fact, as 
Blake v. Hy Ho Restaurant, Inc.
, 273 Ill. App. 3d 372, 375, 652 N.E.2d 807, 810 (1995), points out:

"[A]ppellants' argument that their respective liability should be reduced by the 
pro rata
 share of the dismissed defendant's liability is misdirected and erroneous.  If such were the case, a nonsettling defendant would receive a double benefit.  First, any judgment amount entered in favor of a plaintiff would be reduced to reflect the partial settlement.  Then, potentially, the nonsettling defendants would reap an additional benefit if found less than 25% at fault because the judgment having once been reduced to reflect the settlement could be subject to less than full satisfaction under the terms of section 2-1117."   

Turning to defendants who are immune from suit, such as the plaintiff's employer, the State of Illinois, and others, what is the practical effect of eliminating them from the allocation equation?  First, as we indicated earlier, if for some unfathomable reason an immune defendant does not raise its immunity and is subjected to a judgment, then the allocation provisions of section 2-1117 would properly include that defendant's fault in the equation.  This result would be fair to all parties because as the plaintiff is able to collect whatever portion of the judgment was attributable to the immune defendant, so also should that immune defendant's conduct be considered under section 2-1117's allocation of fault.  But if the immune defendant asserts its immunity, or if the plaintiff does not file against the immune defendant because he or she is obeying the dictates of the supreme court rule which prohibits such unmeritorious filings (155 Ill. 2d R. 137), then the immune defendant will never be subject to any collection procedure by the plaintiff and its conduct should not play any part in the allocation equation of section 2-1117.

This result is not unfair to the defendant in this case because both the original defendant, Marcal, and the employer and third-party defendant, Granite City Steel, are each responsible for 100% of the plaintiff's injury.  The conduct of each was a proximate cause of one indivisible injury, just as the negligent dispenser of poison and the intentional dispenser of poison were each fully responsible for the coffee drinker's death.  The fact that the relative culpability of the defendants 
vis-a-vis one another
 was calculated at 90%/10% under the Contribution Act does not change the responsibility of each to the plaintiff.  The fact that Marcal cannot recover the full amount of its contribution claim from Granite City Steel is the result of 
Kotecki
, not the result of the language of section 2-1117.

For all the foregoing reasons, we hold that, for purposes of section 2-1117, an employer is not a "third party defendant who could have been sued by the plaintiff."  Therefore, Marcal's percentage of responsibility 
under section 2-1117
 is not below 25%, and it is jointly liable for all damages to plaintiff.

Nonpublishable material under Supreme Court Rule 23 omitted.

Since we have concluded that, for purposes of section 2-1117, an employer is not a "third party defendant who could have been sued by the plaintiff" and that the evidence supports the jury's verdict, we affirm the decision of the trial court.

Affirmed.

KUEHN, P.J., and GOLDENHERSH, J., concur.