**George P. JANSEN and Theresa Jansen,**
**Plaintiffs–Appellees,**

**v.**

**AARON PROCESS EQUIPMENT CO., INC., Defendant–Appellant/Third Party Plaintiff–Appellant, Cross–Appellee,**

**v.**

**LUXEMBOURG CHEESE FACTORY, INC., Third Party Defendant–Appellee, Cross–Appellant.**

Nos. 97–1309, 97–1343.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 14, 1997.

Decided July 9, 1998.

William T. Cacciatore, William T. Cacciatore & Associates, Rockford, IL, for Plaintiffs–Appellees.

Karen L. Kendall (argued), Brad A. Elward, Heyl, Royster, Voelker & Allen, Peoria, IL, for Defendant–Appellant Aaron Process Equipment Co., Inc.

Neil D. O'Connor (argued), Loretta M. Griffin, Milton K. Buckingham, O'Connor, Schiff & Myers, Chicago, IL, for Defendant–Appellee Luxembourg Cheese Factory, Inc.

Before WOOD, Jr., KANNE, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

In this case, we return to the perplexing relation among three Illinois statutes as they existed at the time of the events giving rise to this litigation (and indeed, as they once again read): the Illinois Modified Comparative Fault Statute, Ill.Rev.Stat.1991, ch. 110, § 2–1117 ("the Joint Liability Act"), amended and recodified at 735 Ill. Comp. Stat. 5/2–1117; the Illinois Joint Tortfeasor Contribution Act, Ill.Rev.Stat.1991, ch. 70, § 301 *et seq.* ("Contribution Act"), amended and recodified at 740 Ill. Comp. Stat. 100/1 *et seq.*; and the Illinois Workers' Compensation Act, Ill.Rev.Stat.1991, ch. 48, §§ 138.5(a), 138.11, amended and recodified at 820 Ill. Comp. Stat. 305/5(a), 305/11(all amendments invalidated by *Best v. Taylor Mach. Works*, 179 Ill.2d 367, 228 Ill.Dec. 636, 689 N.E.2d 1057, 1081–84, 1084–89, 1101–06 (1997), which struck down the Civil Justice Reform Amendments of 1995 in their entirety). Section 2–1117 of the Joint Liability Act creates an exception to the normal rule of joint and several liability in tort, by making a defendant whose fault is "less than 25% of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendant who could have been sued by the plaintiff" only severally liable. This appeal and cross-appeal turn on the question whether Luxembourg Cheese Factory, the plaintiff George P. Jansen's employer, was a "third party defendant who could have been sued by the plaintiff" for purposes of the § 2–1117 calculation. Aaron Process, a co-defendant, cares about Luxembourg's status because Aaron Process's own liability will be less than 25% if Luxembourg is such a third-party defendant, and greater than 25% (and hence joint and several) if Luxembourg's fault is excluded from the § 2–1117 calculation. Following this court's decision in *Freislinger v. Emro Propane Co.*, 99 F.3d 1412 (7th Cir.1996), the district court concluded that Luxembourg was not a "third party defendant who could have been sued by the plaintiff" for purposes of the Joint Liability Act and thus left Aaron Process holding most of the bag. In spite of Aaron Process's best efforts, we remain convinced that in *Freislinger* we correctly predicted how Illinois would resolve this question, and we affirm the judgment of the district court.

## I

On August 15, 1991, George Jansen was severely injured while he was attempting to clean a slow-speed industrial cheese blender for his employer, Luxembourg. Jansen had initially tried to clean the blender with water and a caustic agent, to no avail. At the request of his supervisors, he eventually climbed into the blender with an air grinder that he planned to use to remove hardened material that had accumulated on the paddles of the blender. Just before he got in, he saw his coworker Steven Heller shut off the switches for the ribbon blender. He worked for about 20 minutes without incident, but then the machine suddenly turned on. Jansen tried to grab the center shaft of the blender, but he was thrown from it. Before another fellow employee was able to stop the machine at the main circuit breaker box, the blades broke Jansen's leg and seriously lacerated his abdomen.

Aaron Process was the manufacturer of the ribbon blender. It sold the machine in question to Luxembourg in August 1987. Testimony at trial indicated that Aaron Process shipped the blender to Luxembourg in a partially assembled form and without a $40 "limit switch" that would have cut the electricity to the machine if the lid were opened. When Luxembourg received the blender, it completed the assembly and installation of the blender, but it did not add the necessary "limit switch" or wire the circuit breaker with a lock-out device. The evidence introduced at trial suggested that either a proper limit switch or lock-out device would have prevented the accident, which probably occurred because of an electrical short near the motor and relay. The evidence also suggested that Luxembourg had improperly installed and wired the machine.

George and Theresa Jansen (both Wisconsin citizens) filed this diversity suit against Aaron Process, an Illinois company with its principal place of business in Illinois, raising

a number of state law claims including counts based on negligence and products liability. Aaron Process responded with an affirmative defense based on the Comparative Fault Act, Ill.Rev.Stat.1991, ch. 110, § 2–1116, alleging that Jansen's claim was barred because he was more than 50% responsible for the accident. Aaron Process also brought a third-party complaint under the Contribution Act against Luxembourg. The case proceeded to a jury trial, at the conclusion of which the jury found in favor of Jansen on the negligence count, but in favor of Aaron Process on counts based on loss of consortium and products liability. The jury also ruled for Aaron Process on its contribution claim, finding that of the total pool of defendant fault, Luxembourg was responsible for 83% while Aaron Process could be blamed for only 17%. On a separate verdict form, the jury found the plaintiff was 10% contributorily negligent.

The total amount of the jury's verdict was $800,000, which the court reduced by 10% to $720,000 to take into account the jury's finding that Jansen was contributorily responsible for the accident to that extent. Because of the operation of § 2–1117, which imposes joint and several liability without exception for reasonable past and future medical costs, the parties stipulated that Aaron Process was jointly liable for $100,000 of the total amount. (Apparently no one argued that the effect of § 2–1116, together with the jury's finding that Jansen was 10% responsible, meant that the $100,000 in medical costs was subject to a 10% reduction; we therefore express no opinion on this question.)

The next question was whether Aaron Process was entitled to the "several liability" safe harbor of § 2–1117 for defendants whose fault is less than 25% of the total attributable to certain parties. To answer that question, the judge had to allocate responsibility among three potential sets of parties: (1) the plaintiff(s), (2) the defendants sued by the plaintiff(s), and (3) "any third party defendant[s] who could have been sued by the plaintiff[s]." Here, the only third-party defendant in the suit was the employer, Luxembourg. Following *Freislinger,* the judge concluded that the *plaintiffs* could not have sued third-party defendant Luxem-

bourg, because the Workers' Compensation Act does not permit a covered employee to sue her employer either under a common law or a statutory theory (and thus it assures the exclusivity of the workers' compensation remedy). The result was that, although the jury had found Luxembourg 83% at fault and Aaron Process only 17% at fault as between themselves, Aaron Process was jointly liable to the Jansens for the remaining balance of the judgment (after the adjustments for Jansen's 10% fault). Aaron Process in turn was entitled to seek contribution from Luxembourg under the Contribution Act—but only up to the amount Luxembourg was liable for under the Workers', Compensation Act. See *Doyle v. Rhodes,* 101 Ill.2d 1, 77 Ill.Dec. 759, 461 N.E.2d 382, 384–89 (1984); *Kotecki v. Cyclops Welding Corp.,* 146 Ill.2d 155, 166 Ill.Dec. 1, 585 N.E.2d 1023, 1028 (1991). (The record reflects that prior to the trial the Travelers Insurance Company paid to Jansen on Luxembourg's behalf $212,178.25 in workers' compensation; Luxembourg has asserted a lien for that amount. If Luxembourg is credited somehow with that payment, then Aaron Process will be entitled to an adjustment in the amount it owes Jansen.)

Deeply dissatisfied with this outcome, Aaron Process filed a post-trial motion arguing that the trial court should have included Luxembourg in its apportionment of liability. Had the court done so, Aaron Process argued that its share of liability would have fallen below the 25% threshold set forth in § 2–1117, and while it would have been jointly and severally liable for the $100,000 in medical expenses, according to its calculations it would only have been severally liable for 17% of $620,000, the remaining non-medical damages (after taking into account plaintiff's contributory negligence). Relying principally on this court's *Freislinger* decision, the district court rejected Aaron Process's argument and confirmed the verdict. On appeal, in addition to arguing that *Freislinger* is either wrongly decided or distinguishable, Aaron Process asserts that it is entitled to recover on several additional grounds: Luxembourg's failure to use a lock-out device constituted an independent intervening act that exonerated Aaron Process; Aaron Process is entitled to judgment as a matter of law because it owed

no duty to Jansen; and Aaron Process is entitled to a new trial either because the district court incorrectly concluded that it was a "manufacturer" of the ribbon blender or because the verdict was against the weight of the evidence. As cross-appellant, Luxembourg argues that it is entitled to a new trial based on several evidentiary rulings of the district court, and (somewhat mysteriously), it joins Aaron Process in urging that it was a party who could have been sued by Jansen for purposes of § 2–1117. It reasons that the trial court should therefore have entered a judgment of $83,000 against itself, representing 83% of the $100,000 in medical expenses for which it is jointly and severally liable with Aaron, and zero of the remaining $620,000, claiming that it owes none of that sum because of its protection through the Workers' Compensation statute.

## II

■ The central question here, as in *Freislinger*, relates to the way in which § 2–1117 applies when an employer protected by the Workers' Compensation statute is in the picture. For convenience, we reproduce § 2–1117 in its entirety:

> Except as provided in Section 2–1118 [for certain environmental and medical malpractice lawsuits], in actions on account of bodily injury or death or physical damage to property, based on negligence, or product liability based on strict tort liability, all defendants found liable are jointly and severally liable for plaintiff's past and future medical and medically related expenses. Any defendant whose fault, as determined by the trier of fact, is less than 25% of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendant who could have been sued by the plaintiff, shall be severally liable for all other damages. Any defendant whose fault, as determined by the trier of fact, is 25% or greater of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendants who could have been sued by the plaintiff, shall be jointly and severally liable for all other damages.

We interpreted this passage as follows in *Freislinger*, where as here we had to decide whether an employer's contribution to an accident had to be taken into account for purposes of the Joint Liability statute:

> The court must add up the total fault allocated to a defined set of potentially responsible parties. This set includes the plaintiff, the defendants sued by the plaintiff, and third-party defendants who could have been sued by the plaintiff. The term "plaintiff" is self-explanatory, and on these facts includes only Freislinger. The term "defendants sued by the plaintiff" means only those defendants who remain in the case when it is submitted to the fact finder—here, Emro and Marathon, but not Phillips, which settled.... Finally, the term "third-party defendants who could have been sued by the plaintiff" refers to anyone who could have been sued in tort. Under the Supreme Court of Illinois' decision in *Kotecki v. Cyclops Welding Corp.*, ... this language does not include an employer protected by the workers' compensation system.... The amount paid under a workers' compensation award may reduce the total amount recoverable under a damages award, but the employer is not included in the § 2–1117 calculation because it is not a party who "could have been sued" by the plaintiff.

99 F.3d at 1419 (citations and case references omitted).

The Illinois Supreme Court has held that notwithstanding the Workers' Compensation Act, an employer is subject to contribution claims from other defendants, see *Doyle*, 77 Ill.Dec. 759, 461 N.E.2d at 384–89, but this obligation is limited by the employer's interest in paying no more than its workers' compensation liability, at least in cases where the employer invokes those statutory rights. See, *e.g.*, *Braye v. Archer–Daniels–Midland Co.*, 175 Ill.2d 201, 222 Ill.Dec. 91, 676 N.E.2d 1295, 1300–01 (1997); *Kotecki*, 166 Ill.Dec. 1, 585 N.E.2d at 1028. However, the fact that an employer may be required to pay some amount as contribution to *co–defendants* does not answer the question whether that same employer could be liable in the first instance

to the *plaintiff* for purposes of the Joint Liability Act.

Relying principally on the Illinois Supreme Court's decision in *Doyle v. Rhodes*, both Aaron Process and Luxembourg insist that we erred in *Freislinger*. And indeed, there is some language in *Doyle* that lends support to their point. The question in *Doyle* was "whether the immunity of an employer from an action at law by an injured employee provided by sections 5(a) and 11 of the Workers' Compensation Act ... also bars an action for contribution against the employer by a third party who was partially responsible for the employee's injury." 77 Ill.Dec. 759, 461 N.E.2d at 383–84. The Contribution Act says that "[e]xcept as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them." Ill.Rev.Stat.1991, ch. 70, § 302. The Supreme Court decided that the statutory immunity to a direct action by the employee did not logically lead to a similar immunity from a contribution claim. *Doyle,* 77 Ill.Dec. 759, 461 N.E.2d at 388. In so ruling, the court noted that the Workers' Compensation Act provided the employer with an affirmative defense to a tort action by the employee, but that the employer might waive that defense. *Id.* 461 N.E.2d at 386. Therefore the potential for tort liability exists until the defense is established, which means for purposes of the Contribution Act that the employer is in fact "subject to liability in tort" even though that liability can be defeated if the employer chooses to assert its Workers' Compensation rights. *Id.* at 387. After *Doyle* was decided, the Illinois Supreme Court qualified its reach in *Kotecki* by holding that the employer's contribution liability was limited to the amount it could be required to pay under the workers' compensation program; otherwise, the risk of liability for contribution would virtually destroy the balance struck by the workers' compensation scheme. *Kotecki,* 166 Ill.Dec. 1, 585 N.E.2d at 1027–28.

Aaron Process and Luxembourg argue that if an employer is "subject to liability in tort" for Contribution Act purposes, then the same employer must also be a party who "could have been sued by the plaintiff" for Joint Liability Act purposes. Even though this does not strike us as an unreasonable semantic argument, the Illinois Supreme Court has attempted to reconcile the different statutes in a way that gives full effect to the policy each is intended to implement. From that perspective, we conclude that the Illinois Supreme Court would reconcile the different statutes along lines similar to the one we articulated in *Freislinger*. Our strongest reason for so concluding comes from a recent decision of the Illinois Appellate Court, which has not been questioned by the Illinois Supreme Court. In *Lilly v. Marcal Rope and Rigging, Inc.*, 289 Ill.App.3d 1105, 224 Ill.Dec. 920, 682 N.E.2d 481 (1997), leave to appeal denied, 175 Ill.2d 529, 228 Ill.Dec. 719, 689 N.E.2d 1140 (1997), the appellate court faced precisely the question that is now before us. It conducted a careful analysis of the relevant statutory provisions and Illinois Supreme Court precedents and decided (without, incidentally, citing *Freislinger*) that there is a significant difference between the employer's status for purposes of initial liability to the plaintiff and its status for purposes of contribution.

The *Lilly* court first observed that the legislature chose two different phrases in the Contribution Act and the Joint Liability Act, referring in the former to persons "subject to liability in tort" and in the latter to those who "could have been sued by the plaintiff." *Id.* 682 N.E.2d at 483. If the legislature had wanted the scope of the Contribution Act and the Joint Liability Act to be identical, the court thought, it would have used the same language in both. The legislature's choice of a different phrase signaled to the court that the drafters intended to exclude the class of employers, who, while theoretically "subject to liability in tort," could not be sued by employee-plaintiffs (although perhaps those employers could be sued by others). In addition, the *Lilly* court was influenced by the fact that the Illinois Supreme Court did not have before it in *Doyle* the question whether an employee could, even theoretically, sue his or her employer. *Id.* at 483–84. Instead, the question in *Doyle* involved whether the

employer's *immunity* from an action by an employee also meant that it could avoid contribution. *Id.* Finally, *Lilly* discounted the Illinois Supreme Court's language in *Doyle* that recognized the theoretical possibility of a suit by an employee (i.e., in situations where the employer waived its workers' compensation immunity). Although *Lilly* acknowledged that the employer's fault should be included under § 2–1117 when it was a party actually sued and against whom a judgment was rendered, *id.* at 488, to find that the employer "could have been sued by the plaintiff" for purposes of the Joint Liability Act merely because the plaintiff could theoretically have brought an action by "physically fil[ing] a piece of paper naming a party as a defendant" would be "ridiculous." *Id.* at 486. Most suits by an employee trying to sue an employer in the face of the workers' compensation immunity would be met at best with a rapid dismissal of the action, and at worst with sanctions under the Illinois equivalent to Fed.R.Civ.P. 11. See *id.*; see also Ill. R. Civ. P. 137.

Even though the Illinois Supreme Court has not yet spoken to the question presented in *Lilly*, neither *Doyle* nor *Kotecki* indicate to us that the state Supreme Court would disapprove the *Lilly* reasoning. Indeed, the Illinois Supreme Court has cited *Lilly* with approval in discussing the principle reflected in § 2–1117, critical to *Lilly's* rationale, "that tortfeasors who are held jointly and severally liable are each fully responsible for the entirety of the plaintiff's injury . . . ." See *Best*, 228 Ill.Dec. 636, 689 N.E.2d at 1086–87 (also distinguishing full responsibility for plaintiff's damage from comparative responsibility among defendants). Under those circumstances, under *Erie* we follow the intermediate court's ruling. *Trytko v. Hubbell, Inc.*, 28 F.3d 715, 719 (7th Cir.1994). While the Supreme Court of Illinois obviously remains free at any time to look at this question, in our view *Lilly* is the last authoritative word from the Illinois courts, and as such we must follow it.

The district court therefore correctly disposed of Aaron Process and Luxembourg's arguments. Luxembourg was not a third-party who "could have been sued" by the Jansens, because their sole remedy against Luxembourg was through the Illinois Workers' Compensation program. In keeping with the jury's finding in Verdict Form B indicating that Jansen was 10% responsible for his own injuries, in this case the only parties whose fault goes into the Joint Liability Act equation were Jansen and Aaron Process. Under Verdict Form E, the jury was asked to apportion blame among the defendants for contribution purposes. There they indicated that Aaron Process was 17% responsible and Luxembourg was 83%; we interpret these numbers as applying to the 90% liability that remained after deducting Jansen's 10%. Otherwise, the total would be 110%, which makes no sense. That would make Luxembourg responsible for 83% × 90%, or 74.7%, of the total fault, and Aaron Process responsible for 17% × 90%, or 15.3%, of the total, before we take the Workers Compensation Statute into account. The effect of that law, under *Lilly* and *Freislinger*, is to eliminate Luxembourg for joint liability purposes, and to leave Aaron Process bearing well in excess of the 25% safe harbor of § 2–1117. While we understand how harsh this seems to Aaron Process, the Illinois Supreme Court recently reiterated in *Best* that tortfeasors held jointly and severally liable, as Aaron Process was, are each fully responsible for the entirety of the plaintiff's injury. Only later in the process does the contribution statute allocate responsibility among parties who have been found to be proximate causes of the full injury. See *Best*, 689 N.E.2d at 1086–87. Here, the jury did not find that Aaron Process caused only 17% (or 15.3%) of Jansen's injuries. It found instead that Aaron Process's actions were a proximate cause of 100% of his indivisible injuries. Similarly, it found that Luxembourg's actions were also a proximate cause of 100% of his injuries. The 17% and 83% fault allocation only relates to relative culpability among already culpable parties.

The real problem for Aaron Process, of course, lies in the interaction of the Contribution Act with the Workers' Compensation Act here. As the Supreme Court of Illinois held in *Kotecki*, in the real world Aaron Process cannot recover 83% of the amount it pays to Jansen from Luxembourg, because Luxem-

bourg's liability for contribution is limited to the amount of its liability under the Workers' Compensation Act. 166 Ill.Dec. 1, 585 N.E.2d at 1028. If there were other co-defendants who did not enjoy workers' compensation protection, this seeming inequity would not occur (at least to the same degree). In the end, the question is which kind of party in this frequently recurring situation should finally bear the loss: the party who was a proximate cause of the injury, but who accounted for only 17% (or 15.3%) of the fault as compared with the other parties for contribution purposes, or the injured victim? Under the rule we believe the Illinois Supreme Court would adopt, the culpable tortfeasor rather than the injured victim will bear the financial responsibility and brunt of the effect of the workers' compensation system. While this may not be a perfect outcome, it is the one required by *Lilly, Doyle, Kotecki,* and the governing statutes.

## III

We can be brief about the additional points Aaron Process and Luxembourg have raised. Aaron Process claims that (1) the jury answers could not possibly support a conclusion that Aaron Process's fault was greater than 25%, (2) Luxembourg's failure to use a lock-out device was a supervening cause of the accident, (3) Aaron Process was erroneously classified as the "manufacturer" of the blender, (4) the district court erred in refusing to admit evidence of subsequent remedial measures that would have proven Luxembourg's knowledge of the dangerous condition of the machine, and (5) the jury's verdict was against the weight of the evidence. For its part, Luxembourg argues that it is entitled to a new trial because (1) Aaron Process's expert managed to sneak in testimony about subsequent remedial measures despite the district court's order *in limine* excluding such evidence, (2) Aaron Process's expert improperly testified that the safety standard on which Luxembourg's expert relied was no longer in effect, and (3) the court allowed into evidence a lock-out device that had not properly been disclosed earlier in the proceedings.

■ District courts have broad discretion over the evidence they chose to admit in a trial. *Walton v. Jennings Community Hosp., Inc.,* 999 F.2d 277, 282 (7th Cir.1993). We see nothing in the court's decisions here about the evidence of subsequent remedial measures, the lock-out device, or the safety standard that rises to the level of an abuse of discretion, and we therefore reject Aaron Process's point (4) and all three of Luxembourg's points. Aaron Process's first, second, and fifth points simply invite us to reweigh the evidence that the jury already considered. This is not a case where the jury's answers to a verdict form are contradictory or inconsistent, which would be cause for a new trial. *Timm v. Progressive Steel Treating, Inc.,* 137 F.3d 1008, 1010 (7th Cir. 1998). There was evidence to support the jury's verdict in Jansen's favor on the negligence count, and in Aaron Process's favor on the counts based on loss of consortium, products liability, and contribution. By command of the Seventh Amendment to the U.S. Constitution, that is the end of the matter in a civil case.

■ That leaves Aaron Process's argument that the district court should not have classified it as the manufacturer of a final product because the evidence showed it was at most a provider of component parts. Illinois law, it argues, imposes more extensive (and non-delegable) duties on manufacturers of completed products than on component part suppliers. See, *e.g., Depre v. Power Climber, Inc.,* 263 Ill.App.3d 116, 200 Ill.Dec. 203, 635 N.E.2d 542, 544–45 (1994). How this argument helps Aaron Process is unclear, because the doctrine it invokes applies only in the context of strict liability. In the present action, although Jansen submitted his case under both negligence (Count I) and strict liability (Count IV) theories, the jury found liability only on the negligence count. The jury specifically ruled against Jansen on strict liability, and he has not cross-appealed on that claim. Finally, the instructions on the negligence count referred only to the general duty of "ordinary care" and made no reference whatsoever to "heightened" duties for "manufacturers." Aaron Process's final point of error is thus simply irrelevant.

We AFFIRM the judgment of the district court.